## 1998 ND 130

### In the Matter of the ESTATE OF Florence J. WIELAND, a/k/a Florence Wieland, Deceased.

### Thomas D. WIELAND, Sr., Petitioner and Appellant,

### v.

### Mary F. JEWETT, Personal Representative of the Estate of Florence J. Wieland, Deceased, Respondent and Appellee.

### Civil No. 970395.

### Supreme Court of North Dakota.

### June 30, 1998.

Jay D. Carlson, Fargo, for petitioner and appellant.

Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for respondent and appellee; argued by W. Todd Haggart. Steven A. Johnson on brief.

MESCHKE, Justice.

[¶ 1] Thomas Wieland appeals the denial of his motion to vacate the final distribution of the estate of Florence Wieland, his mother, to consider evidence he claimed to be newly discovered. We affirm the trial court's denial because the additional evidence would not change the distribution of Florence's estate.

[¶ 2] Thomas is the adopted son of Bernard and Florence Wieland, and has one adopted sister, Mary Jewett. Throughout his life, Thomas lived on the family farm in Barnes County. He farmed with his father, became a partner in the farming business, and eventually took over when his father's health declined.

[¶ 3] Bernard and Florence each owned an undivided one-half interest in the 800 acre farm. On November 14, 1980, Bernard and Florence signed separate Contracts for Deed with Thomas for the farm land. The Contracts for Deed were recorded with the Barnes County Register of Deeds on November 18, 1980. By these Contracts, Bernard and Florence each agreed to sell an undivided one-half interest in the land to Thomas for $116,250. Thomas promised to pay Bernard and Florence each $4,889.51 on each May 1 and November 1 of each year thereafter until November 1, 2000, when the balance was due. Thomas also agreed to pay the real estate taxes on the land.

[¶ 4] That same day, Bernard and Florence also signed a "Supplemental Agreement to Sale of Land" with Thomas. The relevant part said:

[Bernard and Florence Wieland] further agree that subject to the income required for their living expenses, they will within the limits of gift tax exclusions forgive payments due from [Thomas] on the Contracts for Deed as a gift, the precise amounts to be determined according to the needs of the sellers from time to time.

This agreement was not recorded.

[¶ 5] On November 14, 1980, too, Bernard and Florence also executed reciprocal wills. Each will gave the surviving spouse all of the decedent's property but, if neither spouse survived, the wills gave all their estates equally to Mary and Thomas.

[¶ 6] Bernard died in 1982. His half of the farm land passed to Florence by his will. The Personal Representative's Deed was recorded on July 28, 1983, thus assigning Bernard's Contract for Deed with Thomas to Florence. In 1987, Florence executed a new will that, after a few specific gifts, equally divided most of her estate between Thomas and Mary.

[¶ 7] Thomas failed to make the agreed payments on the Contracts for Deed and to pay the real estate taxes. By September 1988, these delinquencies together exceeded $275,000. Florence then asked Thomas to quit claim the farm land back to her. Thomas deeded the farm land back to Florence on March 22, 1989. Florence then paid the accumulated real estate taxes.

[¶ 8] Thomas' Quit Claim Deed to Florence, recorded on March 27, 1989, expressly canceled both Contracts for Deed that Thomas had made with his parents.[1] Thomas had mortgaged his interest in the land but, since he no longer had any equity in it, the bank voluntarily released the mortgage at Florence's request. Contemporaneously, Thomas leased the pasture land back from Florence for an agreed $4,000 yearly rental, and thereafter continued to use the pasture.

[¶ 9] On December 19, 1995, Florence executed a new will that gave all of the farm land, with the buildings and improvements, to Mary, who was also named her personal representative. After a few other specific bequests, Florence divided the remainder of her estate with one-third to Mary and two-thirds to Thomas. Florence died on May 24, 1996.

[¶ 10] Mary became personal representative of Florence's estate when probate of the will began on May 30, 1996. Mary's proposed final distribution and notice of hearing were served on all parties, including Thomas, on October 11, 1996. Before the hearing scheduled for November 4, 1996, Thomas moved for a postponement. In his accompanying affidavit, Thomas alleged Florence had improperly devised to Mary improvements and buildings that belonged to him and had failed to honor promises he would one day receive the farm land. He also alleged Mary, as personal representative, breached her fiduciary duties to the estate. The hearing on final distribution of the estate was rescheduled for January 17, 1997.

[¶ 11] Before the rescheduled hearing, Mary and Thomas reached an agreement on the distribution of the estate. By the agreement presented at the hearing by Mary, Mary agreed Thomas would receive a pole barn, two grain bins, and gates and corrals located on the farm, and would have until September 1, 1997, to remove them. She also agreed the $32,000 debt Thomas owed the estate for delinquent pasture rent would be reduced to $4,000. Thomas agreed the farm would be distributed to Mary and he would vacate the farm by May 1, 1997. The trial court approved their agreement and entered a written "Order Approving Amended Final Accounting, Determination of Testacy, Settlement and Confirmation of Distribution" on January 31, 1997 to implement their agreed distribution of Florence's estate.

[¶ 12] When Thomas did not vacate the farm land by May 1, 1997, Mary evicted him by legal action. The court later entered another order to remove his cattle, machinery and personal property. After having lived and worked on the farm nearly all his life, Thomas finally had to leave it.

---

**1.** At trial, Thomas insisted he had never signed the Quit Claim Deed. On appeal, he does not pursue this claim.

[¶ 13] On September 24, 1997, Thomas moved to temporarily restrain any disposition of estate property, to revoke the discharge of the personal representative, and to vacate the final distribution of the estate. Thomas claimed he had recently discovered, among family papers during his eviction move, copies of the 1980 Contracts for Deed and the unrecorded Supplemental Agreement between himself and his parents, and he argued these copies were newly-discovered evidence "that appear to establish that Bernard Wieland and Florence Wieland had mutual contracts and promises to convey the real estate to Thomas." He alleged

> the discovery of [this] new evidence, after the estate had been probated, establishes just cause to review the propriety of personal representative, and primary beneficiary, Mary's failure to disclose the existence of prior contracts and agreements, that may have limited the legal capacity of the decedent, Florence Wieland, hereafter Florence, to change her testamentary intent after the death of her husband, Bernard Wieland, hereafter Bernard, in 1982.

Thomas contended, as he does on this appeal without citing substantiating law, "the mutual promisë made between Florence and Bernard, altered the right of Florence to change the disposition of real property after Bernard's death." [2]

[¶ 14] On December 4, 1997, after a hearing, the trial court denied Thomas' motion to reopen the estate. The court reasoned:

> The fact that both the supplemental agreement ... and the quitclaim deed ... are not firmly in the recollection of the movant's mind does not dispute the fact that they were validly executed for legitimate purposes. No proof appears otherwise.

Thomas appealed.

[¶ 15] Our standard of review of a decision on a N.D.R.Civ.P. 60(b) motion to vacate was recently explained:

> It is within the trial court's discretion whether to grant or deny a motion to vacate. Absent an abuse of this discretion,

we will not set aside the trial court's decision on appeal. A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misinterprets or misapplies the law.

*Filler v. Bragg,* 1997 ND 24, ¶ 9, 559 N.W.2d 225 (citations omitted). "If the judgment sought to be set aside is entered pursuant to a stipulation of the parties, the party challenging the judgment under Rule 60(b), N.D.R.Civ.P., has the additional burden of showing that under the law of contracts there is justification for setting the contract aside." *Peterson v. Peterson,* 555 N.W.2d 359, 361 (N.D.1996) (citing *Soli v. Soli,* 534 N.W.2d 21, 23 (N.D.1995)). We are not convinced the trial court abused its discretion in denying Thomas' motion to vacate the order distributing the estate. Therefore, we affirm.

[¶ 16] Thomas argues vacation of the trial court's order closing the estate was warranted under N.D.R.Civ.P. 60(b)(ii):

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment or order in any action or proceeding for the following reasons: ... (ii) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)....

Thomas argues his 1997 rediscovery of the recorded 1980 Contracts for Deed and the unrecorded Supplemental Agreement, when construed with Bernard and Florence's reciprocal wills, prove he should have received the farm land by gift and inheritance. Thomas alleged, "although the documents were located in boxes in his home, they were his parents' original documents and he was unaware of their existence until his eviction."

[¶ 17] Thomas contended Mary had copies of these documents while she administered Florence's estate, but avoided giving copies to him. Thomas claims he "was not given a fair opportunity to object or contest the will," since he did not have copies of the documents he had signed in 1980 "that provided a basis for challenge to Florence's legal right to

---

2. Thomas also separately sued Mary for breach of her fiduciary duties. Although he contends that lawsuit is a separate matter, he insists he

"moved to vacate the final account to prevent collateral estoppel from applying to" his separate action against Mary.

devise her estate after the death of her husband, Bernard, in 1982." However, the documents were all signed by Thomas and the Contracts for Deed were recorded. Thomas' testimony demonstrated he remained well aware of these documents before relocating them at the farm home in 1997.

[¶ 18] At the hearing on his motion to vacate, Thomas testified:

Q: ... When did you first discover those contracts for deed in your possession?

A: Well, I had seen these contracts when I signed them, obviously. But from the time of any partnership work my father and I had done, everything was filed in with his stuff so I never located them again until the eviction notice that I had to get out of the house.

....

Q: From the time the contracts were entered into in 1980 it was your understanding that you weren't necessarily going to have to make full payment on them. It was your understanding right away when the contracts were entered into that there might be some gifting involved?

A: Yes, it was. My father told me that. My father didn't want to charge me anything for that farm because he never paid a dime for it. And he absolutely didn't want to sell that farm. I believe I was notified by your office that according to the IRS you can't give somebody something, it had to be under payment and went by whatever was legally accepted.

Q: So you had knowledge of the contract and possible gifting arrangement well before you found those documents in the basement?

A: Oh, yes, I did. I just discussed it with my dad.

Thomas' rediscovery of the documents hardly makes them "newly discovered" to justify relief from a final judgment.

■ [¶ 19] Although the trial court reasonably might have concluded the additional evidence was not newly discovered, the trial court ruled the introduction of the additional Supplemental Agreement would not have changed the outcome. The trial court reasoned:

The principal claim of the movant, Thomas D. Wieland, Sr., is that he should be allowed to have the estate reopened because of newly discovered evidence in the form of a supplemental agreement to the sale of land. ... That document bears Thomas D. Wieland's signature, although he claims he was not aware of it until recently going through his father's papers. Even assuming that he did not discover it until recently he is unable to explain the quitclaim deed which he and his then wife ... executed on the 22nd day of March 1989 reconveying all of the property covered by the contracts for deed to his mother, Florence....

No reason has been advanced why the Court should discount his signature or that of his ex-wife or of the then notary....

Denial of a motion to reopen a judgment is proper where the movant "fail[s] to show the trial court how the result would be different if the judgment were reopened." *Zundel v. Zundel*, 146 N.W.2d 896, 902 (N.D.1966). Thomas did not prove how the Supplemental Agreement would have changed the final distribution.

■ [¶ 20] A contract not to revoke a will must be clearly and formally proven.

A contract to make a will or devise, or not to revoke a will or devise ... can be established only by:

1. Provisions of a will stating material provisions of the contract;

2. An express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or

3. A writing signed by the decedent evidencing the contract.

The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

N.D.C.C. § 30.1–09–13. *Jordan v. Anderson*, 421 N.W.2d 816, 820 (N.D.1988), explained:

The Editorial Board Comments of the Commissioners of Uniform State Laws makes clear that this section "tighten[s] the methods by which contracts concerning

succession may be proved" and that "[o]ral testimony regarding the contract is permitted *if the will makes reference to the contract.*" [Emphasis added]. [The decedent's] will does not make reference to a contract to make a will and the petitioners did not offer any writing signed by [the decedent] to evidence such a contract. Rather, the petitioners have offered to present testimony of an oral contract. In the absence of a reference to a contract in [decedent's] will, the Editorial Board Comments prohibit such testimony.

Thomas' additional evidence was insufficient for a factual inference of a contract between Florence and Bernard to devise the farm only to Thomas.

[¶ 21] The hopeful prospect expressed in the Supplemental Agreement to make lifetime gifts from part of the future payments to be made by Thomas on the contracts, with "the precise amounts to be determined according to the needs of the sellers from time to time," did not create an enforceable agreement to give or to devise any property to Thomas. For these reasons, the trial court properly denied Thomas' motion to reopen.

[¶ 22] We affirm the trial court's order denying Thomas' motion to reopen this closed estate.[3]

[¶ 23] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.

---

**3.** "Only items actually in the record may be included in the appendix." N.D.R.App.P. 30(a). Here, Thomas' attorney placed extraneous documents into his appendix. *See* N.D.R.App.P. 13 and 39. Following our precedent in *Woolridge v.* *Schmid,* 495 N.W.2d 52, 56 (N.D.1993), we award double costs to the estate for the appellant's failure to properly comply with appellate procedure.