2001 ND 147

**Eleanor HEINZ, Plaintiff and Appellee,**

v.

**Jerome HEINZ, Defendant and Appellant.**

No. 20000298.

Supreme Court of North Dakota.

Aug. 29, 2001.

Mark R. Fraase, Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, ND, for plaintiff and appellee.

Leslie Johnson Aldrich, Johnson Law Office, Fargo, ND, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Jerome Heinz appealed from a divorce judgment, arguing the trial court erred in distributing the marital property, in awarding Eleanor Heinz spousal support, and in calculating her child support obligation. We affirm the property distribution and the award of spousal support, but we reverse the child support award and remand for recalculation.

I

[¶ 2] Jerome and Eleanor Heinz married in 1976. At the time of trial, Jerome was 50 and Eleanor was 48 years old. They have two children: a daughter, born in 1984; and a son, born in 1989. During the marriage, Jerome was employed as a teacher with the West Fargo School District, and at the time of trial, was in the process of obtaining a master's degree. During summer months, Jerome also worked as a crop insurance adjuster. Eleanor, who had a secretarial certificate from Interstate Business College, worked full-time for several employers during the marriage. After an unsuccessful attempt at marriage counseling, Eleanor sued Jerome for divorce in fall 1999.

[¶ 3] The trial court granted the divorce, awarded custody of the children to Jerome, and ordered Eleanor to pay $469 per month in child support based on the parties' trial stipulation that Eleanor's net monthly income for child support purposes was $1,596. The court further ordered that Eleanor's child support obligation will be reduced to $234.50 per month when the oldest child reaches the age of majority. Concerning the property distribution, the court ordered the marital home to be sold and the proceeds to be split equally between the parties. The court further ordered that Eleanor receive one half of Jerome's retirement account at the time judgment was entered, to be transferred under a qualified domestic relations order. Of the remaining marital property, Eleanor was awarded a net amount valued at $64,840.57, and Jerome was awarded a net amount valued at $71,683. The court also ordered that Jerome pay Eleanor $700 per month in rehabilitative and permanent spousal support for eight years, and then $400 per month in permanent spousal support thereafter until Eleanor remarries, she reaches the age of 65, or either party dies. Jerome appealed.

## II

**[¶ 4]** Jerome argues the property distribution is inequitable because the trial court failed to add his trial attorney fees of $12,000 to his debts, ordered him to pay $3,500 for Eleanor's attorney fees, and failed to consider Eleanor's fault in engaging in two extramarital affairs during the marriage and in mismanaging the parties' joint checking account.

**[¶ 5]** In a divorce, the trial court must distribute the marital property equitably between the parties. N.D.C.C. § 14–05–24. All of the parties' assets, regardless of the source, must be considered to ensure an equitable distribution of the marital property. *Kautzman v. Kautzman,* 1998 ND 192, ¶ 10, 585 N.W.2d 561. A trial court's distribution of marital property need not be equal to be equitable, but the court must explain any substantial disparity. *Corbett v. Corbett,* 2001 ND 113, ¶ 12, 628 N.W.2d 312. In distributing marital property, the trial court must apply the guidelines established under *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966):

> These guidelines allow the trial court, in making a property distribution, to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Freed v. Freed,* 454 N.W.2d 516, 520 n. 3 (N.D.1990). Under the *Ruff–Fischer* guidelines, both economic and noneconomic fault are proper factors for the trial court to consider in dividing marital property. *Hoverson v. Hoverson,* 2001 ND 124, ¶ 17, 629 N.W.2d 573.

**[¶ 6]** A trial court's determinations regarding division of marital property are treated as findings of fact that will not be reversed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). *Northrop v. Northrop,* 2001 ND 31, ¶ 8, 622 N.W.2d 219. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Peterson v. Peterson,* 1999 ND 191, ¶ 6, 600 N.W.2d 851.

**[¶ 7]** It is apparent from the trial court's comments at the conclusion of the trial that the court intended to divide the marital property equally. The parties were married 24 years, and "a lengthy marriage, in general, supports an equal division of all marital assets." *Young v. Young,* 1998 ND 83, ¶ 10, 578 N.W.2d 111. The court equally divided the parties' largest assets, the marital home and Jerome's retirement account. The remainder of the marital assets consisted mainly of annuities, investment accounts, insurance policies, vehicles, and household items. Of the remainder of the marital property, the court awarded Eleanor assets totaling $69,186.82, and debts totaling $4,346.25, for a net distribution of $64,840.57. The court awarded Jerome assets totaling $84,155.39, and debts totaling $12,392.39, for a net distribution of $71,683. Under the trial court's distribution, Jerome received almost $7,000 more than Eleanor. Jerome failed to list any attorney fees in his N.D.R.Ct. 8.3 property and debt listing. Even considering those attorney fees as a debt not considered by the trial court, we see no substantial disparity in the property

distribution. *See, e.g., Halvorson v. Halvorson,* 482 N.W.2d 869, 871 (N.D.1992).

[¶ 8] Eleanor admitted to two extramarital affairs during the marriage. According to Eleanor, the first occurred eight years before trial because of Jerome's lack of attention to their marriage. Eleanor further testified Jerome had no knowledge of the affair, and it did not contribute to the breakup of the marriage. According to Eleanor, the second occurred after the parties had separated and she had sued for divorce, and the relationship had ended by the time of trial. Although Eleanor occasionally overdrew their joint checking account, she testified Jerome caused tension in the marriage by contributing too much income to inaccessible retirement accounts rather than to "the needs of the household." The trial court found both parties were credible witnesses.

[¶ 9] We conclude the trial court's division of marital property is not clearly erroneous.

### III

[¶ 10] Jerome argues the trial court erred in awarding Eleanor rehabilitative and permanent spousal support of $700 per month for eight years and permanent spousal support of $400 per month thereafter.

[¶ 11] Upon granting a divorce, a trial court may compel either party to make such suitable allowances to the other for support as the court may deem just. N.D.C.C. § 14–05–24. Property division and spousal support are interrelated, *Weigel v. Weigel,* 2000 ND 16, ¶ 6, 604 N.W.2d 462, and the *Ruff–Fischer* guidelines also apply when determining whether spousal support should be awarded. *Hoverson,* 2001 ND 124, ¶ 31, 629 N.W.2d 573. In *Corbett,* 2001 ND 113, ¶ 18, 628 N.W.2d 312, we explained:

"Spousal support is aimed at balancing the burdens and disadvantages created by the divorce. We recognize permanent and rehabilitative spousal support as two distinct remedies. Permanent support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage.

Rehabilitative spousal support, on the other hand, is appropriate when it is possible to restore an economically disadvantaged spouse to independent economic status, or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity. There are two approaches to awarding rehabilitative spousal support. One is the 'minimalist doctrine' which has as its objective rehabilitating the recipient for minimal self-sufficiency. We have rejected this doctrine in favor of the more 'equitable' approach to determining rehabilitative spousal support, which attempts to provide education, training, or experience that will enable the recipient to achieve 'adequate' or 'appropriate' self-support while improving her employment skills."

(quoting *Riehl v. Riehl,* 1999 ND 107, ¶¶ 11–12, 595 N.W.2d 10). A disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *Johnson v. Johnson,* 2000 ND 170, ¶ 49, 617 N.W.2d 97. A trial court's determination on spousal support is treated as a finding of fact which will not be set aside on appeal unless clearly erroneous. *Schiff v. Schiff,* 2000 ND 113, ¶ 42, 611 N.W.2d 191.

[¶ 12] The trial court's findings on spousal support are sparse, with the court merely saying it had considered the *Ruff–Fischer* guidelines in making its award. However, detailed findings, while helpful, are not required if we can determine the reasons the trial court granted the award. *Wolf v. Wolf*, 557 N.W.2d 742, 744 (N.D.1996). We can discern the reasons from the record. At the time of trial, Jerome was 50 years old, Eleanor was 48 years old, and both parties were in good health. Eleanor was "pretty much the sole care provider" for the children for most of their lives, working full-time in secretarial jobs throughout the marriage. Jerome worked as a teacher during the school year and supplemented the family income by working as a crop insurance adjuster during the summer. Jerome pursued his master's degree to enhance his teaching income and opportunities and was within one month of receiving it at the time of trial. The parties intended that, after Jerome completed his master's degree, Eleanor would have the opportunity to pursue her bachelor's degree. Eleanor had lost a job paying her more than $29,000 per year because she had not yet completed her college degree.

[¶ 13] At the time of trial, Eleanor was employed full-time as an administrative assistant and was earning about $25,000 per year. Jerome was employed as a teacher earning $35,475 per year. Jerome had signed a contract for the next school year providing for an increase in salary of between $2,500 and $3,000. Upon receiving his master's degree, Jerome would receive an additional $7,000 pay increase, resulting in a teaching salary of approximately $45,000. In the past, Jerome had earned between $11,000 and $12,000 working as a crop insurance adjuster during the summer, but his income from summer employment had declined significantly because of the time required to spend with the chil-

dren and work on his master's degree. Eleanor testified that, because she had to continue working full-time, she would not be able to complete her bachelor's degree until she was 56 or 58 years old.

[¶ 14] The record reflects Eleanor is a disadvantaged spouse who bypassed opportunities and lost advantages while contributing to Jerome's substantially increased earning capacity during the parties' long-term marriage. There is a substantial income disparity between the parties, with Jerome earning essentially twice as much as Eleanor. The likelihood of Eleanor substantially increasing her earnings by obtaining a bachelor's degree is lessened by the difficulty she may have entering the job market at an advanced age. *See, e.g., Fox v. Fox*, 1999 ND 68, ¶ 23, 592 N.W.2d 541. Even if Eleanor found employment, her available working years limit her ability to earn substantial raises over time. As a result, Eleanor may be incapable of adequate rehabilitation or self-support. *See, e.g., Zuger v. Zuger*, 1997 ND 97, ¶ 19, 563 N.W.2d 804. Moreover, spousal support will help to balance the economic burden created by the parties' separation. *See Moilan v. Moilan*, 1999 ND 103, ¶ 11, 598 N.W.2d 81. Under these circumstances, we conclude the trial court's award to Eleanor of $700 per month rehabilitative and permanent spousal support for eight years and $400 per month in permanent spousal support thereafter until Eleanor turns age 65, she remarries, or either party dies, is not clearly erroneous.

IV

[¶ 15] Jerome argues the trial court erred in computing Eleanor's child support obligation because there are no "specific figures" to support it, the spousal support payments were not included in the calcula-

tion, and dividing the obligation in half upon the oldest child reaching the age of majority violates the guidelines.

[¶ 16] Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. *Minar v. Minar*, 2001 ND 74, ¶ 10, 625 N.W.2d 518.

[¶ 17] A proper finding of net income is essential to determine the correct amount of child support under the child support guidelines, *Hoverson*, 2001 ND 124, ¶ 35, 629 N.W.2d 573, and we have said the trial court must clearly set forth how it arrived at the amount of income and level of support. *See Lauer v. Lauer*, 2000 ND 82, ¶ 3, 609 N.W.2d 450; *Berg v. Ullman ex rel. Ullman*, 1998 ND 74, ¶ 18, 576 N.W.2d 218; N.D. Admin. Code § 75–02–04.1–02(10). During the trial, Jerome's trial counsel stipulated with Eleanor's counsel that Eleanor's monthly net income was $1,596. Under N.D. Admin. Code § 75–02–04.1–10, this resulted in a child support obligation of $469. Stipulations by parents to pay an amount of child support less than that required by the child support guidelines violate public policy and will not be enforced. *See, e.g., Zarrett v. Zarrett*, 1998 ND 49, ¶ 11, 574 N.W.2d 855; *Smith v. Smith*, 538 N.W.2d 222, 227 (N.D.1995); *Rueckert v. Rueckert*, 499 N.W.2d 863, 868 (N.D.1993). Here, however, Jerome's appellate counsel does not argue the stipulation itself is a miscalculation of income resulting in less support than required by the guidelines, but ar-

gues only that the trial court erred in accepting the parties' stipulation and not requiring litigation and adjudication of Eleanor's net monthly income. Absent any indication that improper information was used to arrive at the stipulation, we conclude Jerome's argument is without merit.

[¶ 18] Nevertheless, we must reverse the child support award and remand for recalculation. The child support amount set forth in the judgment was based on the parties' stipulation, which was accepted before the trial court decided whether it would award Eleanor spousal support. The trial court ultimately did award Eleanor spousal support, and under N.D. Admin. Code § 75–02–04.1–01(5)(b), "gross income," for purposes of computing child support, includes "spousal support payments received." *See Corbett*, 2001 ND 113, ¶ 32 n. 4, 628 N.W.2d 312; *Mahoney v. Mahoney*, 1997 ND 149, ¶ 34, 567 N.W.2d 206. The most recent information available should be used to compute child support. *See Shaver v. Kopp*, 545 N.W.2d 170, 176 (N.D.1996). Eleanor's spousal support payments must be included in computing her monthly net income for child support purposes.

[¶ 19] Moreover, the trial court ruled Eleanor's $469 child support payment would be reduced to one-half that amount, $234.50, when the oldest child reaches the age of majority. This is an amount less than the $346 mandated by the guidelines and is erroneous as a matter of law. *See* N.D. Admin. Code § 75–02–04.1–10. The guidelines contemplate a greater cost of providing for the first child of a household and do not reflect a pro rata allocation of support for each child. *Steffes v. Steffes*, 1997 ND 49, ¶ 28, 560 N.W.2d 888. Consequently, we reverse the child support award and remand for

recalculation in accordance with the guidelines.

V

[¶ 20]   We decline to exercise our concurrent jurisdiction to address Eleanor's request for attorney fees on appeal. *See* *Moilan,* 1999 ND 103, ¶ 36, 598 N.W.2d 81. We affirm the divorce judgment in part, but reverse the child support award and remand for recalculation.

[¶ 21] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.