IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2004 ND ___

Suzanne M. Amsbaugh, Plaintiff and Appellant

v.

Terry A. Amsbaugh, Defendant and Appellee

No. 20030059

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable David W. Nelson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Robert S. Rau of Bosard, McCutcheon & Rau, Ltd., P.O. Box 939, Minot, N.D. 58702-0939, for plaintiff and appellant.

Paul M. Probst, Probst Law Firm, Northland Professional Building, 600 22nd Avenue NW, Minot, N.D. 58703-0986, for defendant and appellee; submitted on brief.

Amsbaugh v. Amsbaugh

No. 20030059

Sandstrom, Justice.

[¶1] Suzanne Amsbaugh appeals a Northwest Judicial District Court divorce judgment awarding her less than one-half of the marital estate and denying her spousal support and attorney fees.  Suzanne Amsbaugh argues that the district court erred in improperly valuing the marital property; in awarding her less than one-half of the marital estate; in reducing the amount of property she was to receive by deducting guardian fees, child support payments made by Terry Amsbaugh, and credit card debt; and in failing to award her spousal support or attorney fees.  We affirm with adjustment, concluding the district court’s decision was not clearly erroneous and the court did not abuse its discretion.

I

[¶2] Suzanne and Terry Amsbaugh were married in May 1975.  Suzanne Amsbaugh sued for divorce in February 2001, and the couple separated on July 1, 2001.  At the time of the hearing, the parties had been married for 27 years, and both were 46 years old.  Suzanne Amsbaugh currently resides in an apartment in Minot, while Terry Amsbaugh resides in the marital home with the parties’ minor son.  In 1999, Suzanne Amsbaugh began working at Trinity Hospital in Minot as the coordinator of the sewing and crafts department.  At the time of the hearing, she was working 40 hours a week and earning $10.00 per hour.  In 1999, Terry Amsbaugh and two partners started a marketing firm, Results Unlimited, in Minot.  At the time of trial, Terry Amsbaugh was earning $25,000-$26,000 per year.

[¶3] On September 24, 2001, an interim order granted the parties divided and split custody.  Suzanne Amsbaugh was granted the care, custody, and control of the parties’ son from the first day of each month through 6:00 p.m. on the fifteenth day.  Terry Amsbaugh was granted the care, custody, and control from 6:00 p.m. on the fifteenth day through the last day of the month at 6:00 p.m.  Reasonable visitation was granted to both parties.  The district court also ordered Terry Amsbaugh to pay interim child support and spousal support for a combined total of $300 per month.

[¶4] In May of 2002, Terry Amsbaugh moved to amend the interim order.  He sought to terminate his child support obligation, claiming the parties’ son was residing exclusively with him.  Because of disputed facts, the district court denied the order; however, it reserved the right to offset the property settlement if it became apparent at the hearing that the motion should have been granted.

[¶5] A hearing was held on November 1 and continued on December 16, 2002.  The district court granted the parties a divorce on the grounds of irreconcilable differences.  The district court granted the parties joint custody but granted Terry Amsbaugh primary physical care and control.  The district court initially had a property split of roughly 50 percent in mind, but the court modified this amount to reflect child support overpaid by Terry Amsbaugh, debts incurred solely by Suzanne Amsbaugh after the parties had separated and while Terry Amsbaugh was continuing to pay the marital debts, and half of the $944 in guardian ad litem fees Terry Amsbaugh was ordered to pay.  The district court explained that these items, combined with Suzanne Amsbaugh’s drinking and lack of attempts to address her alcohol problem, justified the offset.

[¶6] The district court found Suzanne Amsbaugh has had a number of jobs over the years and had left some under less than favorable conditions.  The district court found she was an honorably discharged veteran and she had worked as a waitress, as a secretary, and as a salesperson.  The district court also found she had advanced schooling in horticulture.  The district court found Suzanne Amsbaugh, although capable of more, would probably remain at her current status in her career.

[¶7] The district court found that Terry Amsbaugh was also a veteran.  The district court found he was a one-third partner in an advertising and marketing firm, Results Unlimited.  The district court also found his business, CTI, was basically finished.  The district court found that Results Unlimited was just getting going but should continue to grow and recognized that its potential will be achieved only with a great deal of hard work.  The district court also found there was no guarantee the business would be successful.

[¶8] The district court explained that both parties testified about the conduct of the other that they felt contributed to the divorce.  Suzanne Amsbaugh testified that her husband sat around and played on the computer while she did the housework.  Terry Amsbaugh testified that his wife had a drinking problem and that this problem was the primary reason for the divorce.  He also accused her of having numerous affairs.  The district court found that the affairs were not proven and that Suzanne Amsbaugh’s accusations were exaggerated.  The district court did find, however, that the concerns about Suzanne Amsbaugh’s drinking were warranted.  The district court found that her drinking and her combative nature when drunk did more than anything else to cause the dissolution of the marriage.  The district court also found that it appears Suzanne Amsbaugh minimizes her drinking and is unwilling to take the necessary steps to change.  The district court was also concerned about her use of Prozac for depression while she continued to drink.

[¶9] The district court found that Suzanne Amsbaugh was not a disadvantaged spouse entitled to spousal support.  The district court explained that Terry Amsbaugh had supported her in continuing her education throughout the marriage.  The district court also explained that if Suzanne Amsbaugh is not working to her full potential, it is because of her drinking and her work attitude.  The district court further found each party will be responsible for his or her own attorney fees.  Judgment was entered on January 24, 2003.

[¶10] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal was timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28-27-01 and 28-27-02.

II

[¶11] Suzanne Amsbaugh argues the district court improperly valued the marital home and the business, Results Unlimited.

[¶12] “A trial court’s valuation of property is a finding of fact that is presumptively correct and subject to the clearly erroneous standard of review.”  
Hoverson v. Hoverson
, 2001 ND 124, ¶ 13, 629 N.W.2d 573.  The value given to marital property by the courts depends on the evidence presented by the parties.  
Fox v. Fox
, 2001 ND 88, ¶ 22, 626 N.W.2d 660.  “‘Marital property valuations within the range of the evidence are not clearly erroneous.’”  
Id.
 at ¶ 19 (quoting 
Wald v. Wald
, 556 N.W.2d 291, 295 (N.D. 1996)).  The owner of real property may testify as to the value of his land without any further qualification or special knowledge.  
Anderson v. Anderson
, 368 N.W.2d 566, 569 (N.D. 1985).  The district court is in a better position to judge credibility and observe demeanor and to determine the true facts regarding property value.  
Hoverson
, at ¶ 13.

A

[¶13] Suzanne Amsbaugh argues the district court improperly used Terry Amsbaugh’s valuation of the marital home, because there was no basis for the court’s decision.  She claims her valuation, on the other hand, was based on the latest tax valuation statement of Ward County and on an insurance policy.

[¶14] Terry Amsbaugh testified at trial that he valued the house at $90,000 because of “its location and the close proximity to the trailer houses that are across the street, and the surroundings.”  He explained that the house was built for $63,000 and that there is nothing special in the home or outside the home.  He also testified that his home had never been appraised and that no one from the county had been inside the home.

[¶15] The property valuation of the marital home was within the range of evidence presented; therefore, we conclude the valuation was not clearly erroneous.

B

[¶16] Suzanne Amsbaugh also argues the district court improperly valued the business, Results Unlimited.

[¶17] Suzanne Amsbaugh valued the business at $100,000.  When asked how she came up with this figure, she explained:

What I came up with was I came up with a hundred thousand dollars because it shows on my husband’s tax ret . . . my husband’s tax return that there was a profit that he made of $13,000, and I thought as far as a passbook savings account goes, you make three to five percent.  This is a much riskier business, so I figured a ten percent rate of return on ten thousand dollars.  That’s where I came up with a hundred thousand.

[¶18] The district court valued the business interest in Results Unlimited at $1.00.  Terry Amsbaugh claims that the court’s valuation was “presumably” derived from financial statements of Results Unlimited that were put into evidence.  The district court did not explain how it evaluated the business.  In 
Anderson v. Anderson
, this Court concluded the district court’s valuation of property did not constitute reversible error despite the fact it did not approve of or condone the district court’s method of evaluation.  504 N.W.2d 569, 571 (N.D. 1993).  In 
Anderson
 the district court was faced with choosing between incredible testimony and a questionable method of valuation.  
Id.
  In this case, the district court had to choose between Suzanne Amsbaugh’s valuation, which appeared to be mere speculation on her part, and financial records indicating that the business operates at a loss and has negative worth.  Under the circumstances, we conclude the district court’s valuation of the business was not clearly erroneous.

III

[¶19] Suzanne Amsbaugh argues the district court erred in failing to award her one-half of the marital estate.

[¶20] Suzanne Amsbaugh argues she was entitled to one-half of the marital estate because this was a long-term marriage and there was no economic waste or marital fault.  She claims that any marital fault on her part was condoned.

[¶21] The district court’s decision regarding division of property is a finding of fact and will be reversed only if clearly erroneous.  
Hogan v. Hogan
, 2003 ND 105, ¶ 14, 665 N.W.2d 672.  When a divorce is granted, the district court makes an equitable distribution of the property and debts of the parties.  N.D.C.C. § 14-05-24(1).  When distributing marital property, all of the assets must be considered to ensure the division is equitable.  When all of the assets and debts have been included, the district court can apply the 
Ruff-Fischer
 guidelines.  
Neidviecky v. Neidviecky
, 2003 ND 29, ¶ 10, 657 N.W.2d 255.

[¶22] The district court found the total assets of the parties were valued at $144,865.52 and the total debts were $101,533.46, leaving a net marital estate of $43,332.06.  A fifty-fifty property split would have given each party $21,666.03; however, Suzanne Amsbaugh was awarded $9,909.19
(footnote: 1) and Terry Amsbaugh was awarded $33,422.87.

[¶23] “[A] property division need not be equal to be equitable, but a substantial disparity must be explained.”  
Bladow v. Bladow
, 2003 ND 123, ¶ 5, 665 N.W.2d 724.  “In general, a lengthy marriage supports an equal division of all marital assets.”  
Id.
 at ¶ 8.  The 
Ruff-Fische
r guidelines are factors used by the district court to determine how to divide marital property and award spousal support.  The guidelines originate from 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952), and 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966).

[¶24] Under these guidelines the Court considers:

“the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.  The trial court is not required to make specific findings, but it must specify a rationale for its determination.”

Bladow
, 2003 ND 123, ¶ 7, 665 N.W.2d 724 (quoting 
Weigel v. Weigel
, 2000 ND 16, ¶ 6, 604 N.W.2d 462).

[¶25] In dividing the marital property, the district court explained:

If I were to make an equal (50%) distribution, it would have required giving the Plaintiff the entire Investment Service of America account ($35,921.35).  My computations initially started with that assumption.  From that amount I deducted ½ of the Guardian Ad Litem fees ($944.00 x ½ = $472.00), $2,700.00 for child support the Defendant has paid since March, and $8,700.00.  The $8,700.00 represents the debts the Plaintiff has incurred since separation.  Although marital debts, [are] subject to distribution, they are not well documented and were incurred while the Defendant continued to service the marital debts.  This combined with the [Plaintiff’s] drinking and lack of attempts to address her drinking are my justifications for the offsets.  This results in an uneven net distribution, but in my opinion it is equitable.

[¶26] Although this distribution is not equal, the district court has explained its reasons for the disparity.  Suzanne Amsbaugh, however, argues the district court erred in reducing her property distribution by guardian fees, spousal support paid by Terry Amsbaugh, and post-marital debts.

[¶27] Suzanne Amsbaugh claims she has made the payments required of her for the guardian ad litem fees but that Terry Amsbaugh has not.  It appears from the record that each party paid $500 initially in guardian ad litem fees.  A bill submitted by the guardian ad litem indicates that a previous balance of $642.50 was owed and that a new balance of $622.50 had accrued.  This billing indicates that Suzanne Amsbaugh had paid an additional $321.25.  On November 12, 2002, the district court had ordered the parties to pay half of the $642.50 balance.  The remaining balance of $944 includes $321.25, which Terry Amsbaugh was required to pay.  The district court, therefore, erred in concluding Suzanne Amsbaugh owed half of the $944.00 due for guardian ad litem fees.  Her property award should have been reduced only by half of $622.50, or $311.25.

[¶28] Suzanne Amsbaugh also argues the district court improperly reduced her property award by $2,700 for support paid by Terry Amsbaugh from March 2002 through December 2002.  On September 24, 2001, the district court entered a written interim order that Terry Amsbaugh pay $300 per month for combined child and spousal support.  A hearing had been held on the interim relief, during which the district court ruled from the bench.  No transcript was provided for this hearing.  Although the written interim order provided that Terry Amsbaugh was to pay $300 per month in combined child and spousal support, it did not indicate how much money should be allocated to each.  The district court may have specified the allocation in its oral ruling, but because of the lack of transcript, we do not know.

[¶29] The district court’s findings deducted from Suzanne Amsbaugh’s property distribution “$2,700 for child support Terry Amsbaugh has paid since March” 2002.  Suzanne Amsbaugh argues that because this amount included spousal support, the court erred in reducing her property award by $2,700.

[¶30] “If an appeal is taken in a case in which an evidentiary hearing was held, the appellant must order a transcript of the proceedings.”  N.D.R.App.P. 10(b).  An appellant failing to file a transcript assumes the consequences.  If the record on appeal does not allow a meaningful and intelligent review of the alleged error, we decline to review it.  
Sabot v. Fargo Women’s Health Organization, Inc.
, 500 N.W.2d 889, 892 (N.D. 1993).  The transcript of the hearing on interim relief was not provided in this matter.  The ruling contained in this transcript could have answered the issue regarding the amount of support paid by Terry Amsbaugh that should be considered spousal support.  This ruling may have complemented the interim order ordering Terry Amsbaugh to pay combined child and spousal support.  Here, the lack of a transcript precludes meaningful review of this alleged error; therefore, we decline to review it.

[¶31] Suzanne Amsbaugh also claims the parties stipulated at trial that the child support would be credited at the rate of $100 per month to Terry Amsbaugh, and that the rest would be spousal support.  The record, however, does not reflect a stipulation by the parties to resolve the matter in this manner.

[¶32] Although we decline to review whether the district court erred in reducing the property division by $2,700, we conclude the district court was justified in offsetting Suzanne Amsbaugh’s property distribution by child support paid by Terry Amsbaugh.  In May 2002, Terry Amsbaugh moved to amend the September 24, 2001, interim order.  He sought to terminate his child support obligation, claiming the parties’ son was residing exclusively with him.  Because of disputed facts, the district court denied the order; however, it reserved the right to offset the property settlement if it became apparent at the hearing that the motion should have been granted.  Trial testimony supports the district court’s decision to offset the property settlement by the child support paid.  At trial, Suzanne Amsbaugh testified that the allegations in her response to Terry Amsbaugh’s motion to modify the support were incorrect.

[¶33] Suzanne Amsbaugh also argues the district court improperly reduced her property award by $8,700 worth of debts incurred post-separation.  She claims she has been penalized because she was allocated these debts and then her property award was reduced by the same amount.  “Once all property and debts of the parties are included, a trial court may consider which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment.”  
Neidviecky
, 2003 ND 29, ¶ 11, 657 N.W.2d 255.  We conclude the district court’s reduction in her award was justified.  Suzanne Amsbaugh incurred these debts after the parties had separated and while Terry Amsbaugh continued to make payments on other marital debts.

[¶34] Furthermore, Suzanne Amsbaugh argues that because there was no fault, or that fault was condoned, the unequal distribution is not justified.  The district court found Suzanne Amsbaugh’s drinking and lack of attempts to address her drinking to be a further justification for the offsets in the property distribution.  The district court also found that her drinking and her combative nature when drunk did more than anything else to cause the marital dissolution.  Both “economic and noneconomic fault are proper factors for the trial court to consider in dividing marital property.”  
McKechnie v. Berg
, 2003 ND 136, ¶ 6, 667 N.W.2d 628.  Furthermore, uncontrolled drinking contributing to the breakdown of the marriage, even if involving alcoholism, can be considered a matter of fault.  
See
 
Nastrom v. Nastrom
, 284 N.W.2d 576, 582 (N.D. 1979).  There is much testimony to support the finding Suzanne Amsbaugh did drink and was often combative while drinking.  Suzanne Amsbaugh argues her fault in the marriage has been waived because Terry Amsbaugh condoned her drinking.  She refers to N.D.C.C. § 14-05-13.  This statute involves conditional forgiveness for an offense constituting a cause for a divorce.  This statute does not apply, and we find this argument without merit.  Furthermore, even if this argument had merit, the district court’s distribution of property is sufficiently explained without considering who was at fault.

[¶35] The district court sufficiently explained its reasons for not equally distributing the property in this case; therefore, we conclude the property distribution was equitable and not clearly erroneous.  We direct the district court, however, to increase Suzanne Amsbaugh’s property distribution by $160.75 to reflect the amount she had already paid toward the guardian ad litem bill.  With this minor adjustment, we affirm the district court’s property distribution.

IV

[¶36] Suzanne Amsbaugh contends the district court erred in failing to award her spousal support.

[¶37] “A determination on spousal support is treated as a finding of fact which will not be set aside on appeal unless clearly erroneous.”  
Sommers v. Sommers
, 2003 ND 77, ¶ 15, 660 N.W.2d 586.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made.”  
Shields v. Shields
, 2003 ND 16, ¶ 6, 656 N.W.2d 712.

[¶38] Suzanne Amsbaugh claims she is a disadvantaged spouse who has forgone opportunities because of the marriage.  She claims she was the primary caregiver of their child while Terry Amsbaugh was the primary wage earner.  She also claims the court erroneously focused on her drinking and discriminated against her because of it.

[¶39] Under N.D.C.C. § 14-05-24.1, a district court in a divorce case “may require one party to pay spousal support to the other party for any period of time.”  “Trial courts in our state must consider the 
Ruff-Fischer
 guidelines in making a determination of spousal support.”  
Riehl v. Riehl
, 1999 ND 107, ¶ 8, 595 N.W.2d 10.

[¶40] To award spousal support, the trial court must find the spouse to be “disadvantaged.”  
Riehl
, 1999 ND 107, ¶ 9, 595 N.W.2d 10.  A “‘disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse’s increased earning capacity.’”  
Shields
, 2003 ND 16, ¶ 8, 656 N.W.2d 712 (quoting 
Walker v. Walker
, 2002 ND 187, ¶ 15, 653 N.W.2d 722 (citations omitted)).

The district court stated:

I find neither party to be disadvantaged by the marriage.  The Plaintiff asks the Court for spousal support, but can point to no reasons as to why it is warranted.  The Defendant has supported the Plaintiff’s desires for continuing education throughout the marriage, and if the Plaintiff is not working to her full potential, it is due to her drinking and work attitude.

[¶41] The record supports the district court’s finding.  There is nothing to indicate Suzanne Amsbaugh had to give up opportunities because of the marriage.  Suzanne Amsbaugh had several jobs over the years and had the opportunity to go to college.  The record demonstrates Terry Amsbaugh did not prevent Suzanne Amsbaugh from pursuing further education or from working at her full potential.  Furthermore, the district court did not err in considering the reason she was not working to her full potential.  The district court found any disadvantage she faces arose from her drinking and work attitude and not from the marriage or divorce.  Because the record supports the district court’s finding that Suzanne Amsbaugh was not disadvantaged by the marriage, we conclude the decision to deny spousal support was not clearly erroneous.

V

[¶42] Finally, Suzanne Amsbaugh requests an award of partial attorney fees for the trial and appellate proceedings.

[¶43] “A trial court has considerable discretion in awarding costs and attorney fees, and its decision will not be overturned on appeal absent an abuse of discretion.”  
Giese v. Giese
, 2002 ND 194, ¶ 11, 653 N.W.2d 663.  “A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misapplies or misinterprets the law.”  
Simpson v. Chicago Pneumatic Tool Co.
, 2003 ND 31, ¶ 10, 657 N.W.2d 261.

[¶44] This Court has concurrent jurisdiction with the district court to award attorney fees on appeal.  
Schmidt v. Schmidt
, 2003 ND 55, ¶ 18, 660 N.W.2d 196.  “The key factors in determining the propriety of an attorney fee award in a divorce action are one party’s needs and the other’s ability to pay.”  
Id.
  “[T]he trial court is in the better position to consider the special factors relevant to an award of attorney’s fees under NDCC 14-05-23 relating to the financial status of the parties and the need for and ability to pay attorney’s fees.  These factors are best developed in the fact-finding arena of a trial court.”  
McIntee v. McIntee
, 413 N.W.2d 366, 367 (N.D. 1987).

[¶45] After reviewing the record and arguments presented, we conclude Suzanne Amsbaugh has not shown a need for attorney fees; therefore, we affirm the district court’s judgment requiring both parties to pay their own attorney fees and deny her request for attorney fees on appeal.

VI

[¶46] Suzanne Amsbaugh included Results Unlimited’s 2001 tax return in her appendix even though it was not in the record.  Rule 30(a), N.D.R.App.P., provides: “Only items in the record may be included in the appendix.  The author’s signature on the brief, under Rule 32, certifies compliance with this rule.”  Rule 13, N.D.R.App.P., provides:  “The supreme court may take appropriate action against any person failing to perform an act required by rule or court order.”  We direct that costs on appeal be doubled for Suzanne Amsbaugh’s failure to comply with these rules.  
See
 
Estate of Wieland
, 1998 ND 130, ¶ 22 n.3, 581 N.W.2d 140.

[¶47] Concluding the district court did not err in valuing and dividing the property, denying spousal support, and denying attorney fees, we affirm the judgment of the district court with a slight adjustment.

[¶48]

Maring, Justice, concurring in the result.

[¶49] I agree with the result, but write separately to express my views on the issue of the consideration of fault in the division of marital property.

[¶50] Our Court has said it is well settled that fault, both economic and noneconomic, is a factor the trial court can consider when dividing property.  
See Erickson v. Erickson
, 384 N.W.2d 659, 661 (N.D. 1986) (holding that evidence of adultery was properly considered in dividing the parties’ property); 
Behm v. Behm
, 427 N.W.2d 332, 337 (N.D. 1988) (holding that the trial court’s consideration of evidence of adultery and misuse of marital property when dividing the parties’ property was not clearly erroneous); 
Heinz v. Heinz
, 2001 ND 147, ¶ 5, 632 N.W.2d 443 (holding that evidence of economic and noneconomic fault are proper considerations when dividing marital property); 
McKechnie v. Berg
, 2003 ND 136, ¶ 6, 667 N.W.2d 628 (holding that evidence of economic and noneconomic fault are proper considerations when dividing marital property).

[¶51] I agree, however, with former Justices Levine and Meschke that “[m]arital misconduct which is not significantly related to the economic condition of the marriage is not germane to a division of property and should not be considered.”  
Erickson
, 384 N.W.2d at 662 (Levine and Meschke, J.J., specially concurring) (citations omitted).  An enlightened view of the marriage relationship is aptly described by Justice Levine in her special concurrence in 
Erickson
 as “a partnership enterprise, a joint venture, to which each party contributes his and her efforts and skills, as agreed upon, either or both within or without the home.”  
Id.
 at 663 (citation omitted).

[¶52] An equitable division of the property would, therefore, be on the basis of the contributions to the partnership that entitles each to a fair share without consideration of noneconomic fault.  
Erickson
, 384 N.W.2d at 663.  For the purposes of property division, only conduct that results in “destruction, squandering or waste of assets” would be relevant.  
Id.
  In 
Hoverson v. Hoverson
, our Court defined “[e]conomic misconduct [as] misconduct that results in a wasted asset or in the reduction of the net marital estate.”  2001 ND 124, ¶ 24, 629 N.W.2d 573.

[¶53] A trial court’s determinations regarding division of marital property are treated as findings of fact that will not be reversed on appeal unless clearly erroneous.  
Heinz
, 2001 ND 147, ¶ 6, 632 N.W.2d 443.  A finding of fact is clearly erroneous only if no evidence exists to support it, the court has misapplied the law, or after a review of the entire record, we are left with a definite and firm conviction a mistake has been made.  
Id.
  In the present case, there is evidence that Suzanne Amsbaugh’s drinking contributed to the breakup of the marriage and impacted her financial contributions to the marriage.  Although I am of the opinion the disparity in the division of assets, approximately one-fourth to Suzanne Amsbaugh and three-fourths to Terry Amsbaugh, is substantial and overly harsh for a 27 year marriage, under our current law, I cannot say it is clearly erroneous.

[¶54] Accordingly, I respectfully concur in the result.

[¶55]

FOOTNOTES
1:
Because of a mathematical error, the district court underreports the total value of the assets received by Suzanne Amsbaugh as $9,809.19.