DONNA SPAFFORD, a/k/a Donna Coats, Plaintiff-Appellant, *v.* RICHARD COATS, Defendant-Appellee.

Second District   No. 82—816

Opinion filed October 5, 1983.

Russell E. Burns and Richard L. Turner, Jr., both of DeKalb, for appellant.

Louis E. Neuendorf, of Sandwich, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:
Plaintiff, Donna Spafford, appeals a directed verdict in favor of

the defendant, Richard Coats, as to count I of her amended three count complaint entered in a bench trial by the trial court at the conclusion of the evidence adduced by the plaintiff.

In count I of her amended complaint for impression of a constructive trust plaintiff alleged, first, that she purchased a 1976 Chevrolet El Camino and paid the entire purchase price from her own funds and that said vehicle was titled in the name of the defendant only and that the sole reason for titling the vehicle in the name of the defendant was that the insurance premiums would be less. The plaintiff alleged that she has demanded that defendant convey title of said vehicle to her, or pay her the reasonable value of her interest in said vehicle, but he had refused to do so. Substantially similar allegations were made with reference to two Harley-Davidson motorcycles. Further, the plaintiff alleged in count I that she personally financed the $2,000 down payment on a 1980 Lincoln Mark VI purchased by the couple. Although the Lincoln's title was listed in both their names, that auto, as well as the other aforementioned vehicles, allegedly remain in the possession of the defendant and he has denied plaintiff the right to use them. Plaintiff additionally alleged that she has demanded that defendant convey title to the Mark VI to her or pay her the reasonable value of her interest, the down payment of $2,000, but the defendant has refused. Plaintiff then asked that the court declare the defendant to hold the four vehicles in trust for plaintiff and order him to convey title to those four vehicles to plaintiff.

At trial, plaintiff's evidence disclosed that in August of 1975 she moved into the residence of Richard Coats with her son and continued to reside with him until October 1981. In May or June 1976, a 1976 El Camino truck was purchased by the parties. The vehicle was to be used to pull a boat for recreational purposes. Plaintiff was working at General Electric at the time and agreed to finance the vehicle through the General Electric Credit Union. The loan obtained from the credit union was $5,972.61 and payments on the loan were subsequently deducted from plaintiff's pay check. Plaintiff finished making payments on the account in June 1979. Since the vehicle had an approximate price of $6,000, the balance of the purchase price was obtained from a check drawn on the parties' joint checking account opened in 1975. Prior to the purchase of the El Camino, plaintiff and defendant had expressly agreed that she would obtain the money for the truck; the defendant added that the truck had to be in his name for insurance purposes. Plaintiff also testified that in October 1981, following their separation, she requested the defendant convey title to the truck to her and give her possession of it, but defendant refused.

In April or May 1979, the parties purchased two Harley-Davidson motorcycles. The total purchase price for the vehicles was approximately $11,500. In order to pay for these vehicles, plaintiff arranged an $8,000 loan at the General Electric Employee Credit Union, and defendant traded in a motorcycle to pay for the $3,500 remaining on the purchase price. The loan obtained from the plaintiff's credit union to purchase these motorcycles was fully paid back by plaintiff in June 1982.

Prior to purchasing the motorcycles, plaintiff and defendant had a conversation regarding title and use of these vehicles. Although plaintiff indicated to defendant during this conversation that she wished to have one of the motorcycles titled in her name, defendant refused to do so. Plaintiff testified that defendant claimed it would be impossible because of insurance purposes. Subsequent to their separation, plaintiff requested that defendant convey possession and title of one of the motorcycles to her, but defendant has refused.

In April 1981, plaintiff and defendant purchased a 1980 Lincoln Mark VI, with a purchase price of $12,000. As part of the purchase price on these vehicles, the parties traded in two Datsun automobiles. These cars had been titled in the defendant's name but purchased from funds in the parties' joint checking account. Plaintiff also withdrew $2,000 from her credit union to contribute toward the down payment.

The Lincoln auto was initially titled in the names of Richard and Donna Coats. However, upon moving out of defendant's residence in October 1981, plaintiff signed over title to the defendant.

On cross-examination of the plaintiff, defendant elicited that plaintiff was not at any time married to the defendant. The parties never had any agreement, oral or written, concerning their respective property rights in property which either of them separately owned prior to living together, or in property acquired by either of them during their cohabitation. Plaintiff also admitted that defendant had contributed certain sums of money and purchased certain articles during the time they were living together. No testimony was elicited concerning the specific identity of these articles or the amount of money defendant had contributed while they lived together.

On December 17, 1982, after the close of plaintiff's case, the court directed a verdict in favor of the defendant. Using *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, as the basis for its decision, the trial court noted that plaintiff had no claim to the vehicles since there was no contract with respect to the El Camino or the two motorcycles, and since plaintiff had given up her rights in the Mark VI by transferring the

title to the defendant. Further, the court stated that even under equitable principles, plaintiff could not claim property rights in the vehicles because of her cohabitation with defendant: "while the money's coming out of her salary perhaps on a deduction (to pay off the credit union loan), money is also coming out of his salary for support and maintenance." In its judgment order the trial court found that the evidence wholly failed to establish the cause of action alleged in count I of plaintiff's complaint.

■ Ordinarily, under Illinois law a constructive trust may be imposed where the person in possession of the property would be unjustly enriched if he were permitted to retain that property; the remedy is available in circumstances where one has received property which in equity and good conscience, he ought not be allowed to retain. *Chicago Park District v. Kenory, Inc.* (1982), 107 Ill. App. 3d 222, 224.

The principal issue presented by the parties on this appeal is whether the granting of such relief to the plaintiff, an unmarried cohabitant, is barred by the public policy enunciated in *Hewitt v. Hewitt*. Defendant also argues, however, that plaintiff's proof contained no evidence upon which the trial court could determine the equities of the parties, even if the court were not barred from doing so by the public policy set forth in *Hewitt*.

■ This latter argument does not have merit. We recognize that in ruling on a motion for a directed finding at the conclusion of plaintiff's case, a trial court, in a bench case, must weigh the evidence in reaching its decision. *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 111.

However, from our review of the plaintiff's evidence, even after the weighing process, we conclude that independent of the public policy considerations of *Hewitt*, there were sufficient facts to establish a *prima facie* case for the imposition of a constructive trust; and insofar as the trial judge's ruling was based upon lack of evidence, it was against the manifest weight of the evidence.

The dispositive issue is whether plaintiff's claims are barred by the public policy set forth in *Hewitt*. In that case, the Illinois Supreme Court held that an unmarried cohabitant's claims were unenforceable because they contravened the public policy implicit in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 102, 305) disfavoring the grant of mutually enforceable property rights to knowingly unmarried cohabitants.

Plaintiff would distinguish *Hewitt* on the grounds that in that controversy the unmarried cohabitant sought property rights similar to

those in a valid and legal marriage, but based upon her claim upon mere cohabitation. In the present case, plaintiff asserts that since the claim to property is not founded simply upon proof of cohabitation or the plaintiff's performance of domestic services, appropriate restitutionary remedies may be used to prevent unjust enrichment in property disputes between the cohabitants. Plaintiff argues that her demand for equitable relief such as a resulting trust, constructive trust, or contract implied at law is therefore not precluded by *Hewitt*.

In *Hewitt*, an unmarried cohabitant claimed property rights amounting to an equal share of the property accumulated by the parties during their period of unmarried cohabitation. While the claims in *Hewitt* were based primarily upon the rendition of housekeeping and homemaking services, the claimant in *Hewitt* argued that because her action was founded on express contract, her recovery did not imply that unmarried cohabitants acquire property rights merely by cohabitation and subsequent separation. *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 56.

In considering this argument, the *Hewitt* court first recognized that claims of this nature would more likely arise under common law principles of implied contract, equitable relief, and constructive trusts, rather than under any express agreement. The court also stated that it was aware of both the increase in judicial attention given to individual claims of unmarried cohabitants to their jointly accumulated property, and the fact that the majority of courts which have considered the question have recognized an equitable or contractual basis for implementing the reasonable expectations of the parties unless sexual services were the explicit consideration. 77 Ill. 2d 49, 57.

The *Hewitt* court found, however, that the issue of unmarried cohabitants' mutual property rights cannot be characterized solely in terms of contract law, nor be limited to considerations of equity or fairness between the parties. (77 Ill. 2d 49, 57-58.) In determining whether to grant legal status to claims arising from such relationships, of even greater importance than the rights of the immediate parties were the public policy considerations involving both the institution of marriage and society in general. The *Hewitt* court found that the pro-marriage provisions in section 102 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 102) and the putative spouse provision of section 305 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 305) indicated an Illinois public policy disfavoring the grant of mutual enforceable property rights to knowingly unmarried cohabitants; judicial recognition of such rights would violate that policy. (*Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 66.) It is evi-

dent from *Hewitt* that regardless of both the merit of the claims and whether the claims are based on express contract or equitable grounds, a trial court must first determine whether the recognition of the claim contravenes the public policy disfavoring grants of mutually enforceable property rights to knowingly unmarried cohabitants.

The *Hewitt* court did recognize that cohabitation by the unmarried parties may not prevent them from forming valid contracts about independent matters, for which sexual relations do not form part of the consideration. (77 Ill. 2d 49, 59-60.) The court also noted that several sister States have recognized that housekeeping and homemaking services could constitute the consideration for an enforceable contract between cohabitants, severable from the illegal contract founded on sexual relations. Other jurisdictions have even stated that agreements in which the consideration was cohabitation may still be valid. However, in reviewing the cases of these other jurisdictions, our supreme court found naive the assertion that there are involved in these relationships contracts separate and independent from sexual activity. 77 Ill. 2d 49, 59-60.

■ We perceive the real and underlying concern of the supreme court in *Hewitt* was that judicial recognition of mutual property rights between knowingly unmarried cohabitants—where the claim is based upon or intimately related to the cohabitation of the parties—would in effect grant to unmarried cohabitants substantially the same marital rights enjoyed by married persons, resurrect the doctrine of common law marriage, and contravene the public policy enunciated by the Illinois legislature to strengthen and preserve the integrity of marriage. The plaintiff's claims in *Hewitt* for one-half of defendant's property were based primarily upon her services as housekeeper and homemaker and obviously fell afoul of the court's concerns. However, where the claims do not arise from the relationship between the parties and are not rights closely resembling those arising from conventional marriages, we conclude that the public policy expressed in *Hewitt* does not bar judicial recognition of such claims.

Unlike the plaintiff's claims in *Hewitt*, the claims of Donna Spafford are based on evidence that she furnished substantially all of the consideration for the purchase of several vehicles and that under the circumstances shown by the evidence adduced by the plaintiff, permitting the defendant to retain all of the vehicles would constitute an unjust enrichment which equity should not permit.

■ We conclude that the claims of the plaintiff are substantially independent of the nonmarital relationship of the parties and are not based on rights arising from their cohabitation. The judicial recogni-

tion of these claims would not indicate court approval or legal recognition of that nonmarital relationship and would not violate the public policy of this State. The trial court erred in denying equitable relief on the ground that the public policy of the State barred him from considering these claims.

The judgment order of the trial court of October 18, 1982, in favor of defendant and against plaintiff on count I of plaintiff's complaint is reversed and this cause is remanded to the trial court for the completion of the trial and other proceedings consistent with this opinion.

Reversed and remanded.

HOPF and NASH, JJ., concur.