Don KOHLER, Plaintiff and Appellant,

v.

Tangula FLYNN, Defendant and Appellee.

Civ. No. 920098.

Supreme Court of North Dakota.

Dec. 14, 1992.

Richard B. Baer (argued), Bismarck, for plaintiff and appellant.

Carpenter Offices, Bismarck, for defendant and appellee; argued by Deborah J. Carpenter, Bismarck.

MESCHKE, Justice.

Don Kohler appeals a judgment dismissing his claim against Tangula Flynn for division of assets and debts after their cohabitation ended. We affirm.

Don and Tangula began living together in May 1990. They kept separate checking accounts, although Don deposited a disputed amount of his sporadic earnings in Tangula's account, resulting in what the trial court termed a "common pot arrangement." The couple bought a mobile home in Tangula's name, with Don making the down payment and Tangula making subsequent payments. They occasionally paid one another's debts, including some incurred before they lived together. Intending to marry, Don and Tangula became engaged and bought an engagement ring for her.

In November 1990, the couple separated, not having married. Soon after, the mobile home and the engagement ring were destroyed by a fire. Tangula collected the fire insurance proceeds.

Don sued Tangula for an accounting of indebtedness and "an equitable share of their joint properties in the form of money," claiming that "the expenditures and pooling of monies and assets were done in anticipation of marriage which did not take place." Tangula counterclaimed, also seeking damages for her expenditures for Don's benefit, for some damage that Don did to the mobile home when he left, and for personal property allegedly taken by Don.

After a trial without a jury, the trial court recognized that Don's claim was in the nature of "an audit or an accounting," but found the couple's funds to be "hopelessly intermingled." The court also found:

> It is clear ... that whenever one party used identifiable funds belonging to that party for some purchase that was considered as belonging to the other party, that no loan was being made nor was there any expectation of receiving an ownership interest in the item purchased. If anything, they were unconditional mutual gifts.

The trial court concluded that Don and Tangula "parted with essentially the same assets, or their replacements, they had when they entered into the arrangement." The court dismissed both claims.

On appeal, urging that Tangula has been unjustly enriched, Don contends that gifts, assets, and liabilities accumulated during an engagement should be equitably divided when the marriage does not take place. Furthermore, to divide a couple's property after their engagement ends, Don urges the courts to use a "no fault" formula.

Tangula counters that the property of unmarried cohabitants should not be judicially distributed. She argues that, because "[t]here is no legal relationship which is or can be enforceable, ... fault or enrichment are not at issue."

■ This is not a "palimony" case, like the notorious decision in *Marvin v. Marvin*, 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106 (Cal.1976). The *Marvin* plaintiff gave up an entertainment career to live with a well-known actor for seven years, and she sought a share of the actor's property for her services as "companion, homemaker, housekeeper and cook." *Id.* 134 Cal.Rptr. at 819, at 110. One scholar summarizes the *Marvin* holding: "The meaning of the Marvin case thus seems to be that living together out of wedlock, *at least for a substantial period,* gives rise to claims on the part of both parties to share in each other's property on some unspecified equitable basis." 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States*, § 16.8 at 218 (2d ed. 1987) (emphasis added) (footnote omitted). For

the rest of the *Marvin* story, *see Marvin v. Marvin*, 5 Fam.L.Rep. 3077 (Cal.Sup.Ct. 1979); *Marvin v. Marvin*, 122 Cal.App.3d 871, 176 Cal.Rptr. 555 (1981). Here, Don and Tangula lived together for only six months, anything but "a substantial period," and neither gave up any personal or professional opportunity. Even if we were to consider the *Marvin* precedent, it has no bearing on this case.

■ Our law on equitable distribution of marital property in a divorce does not fit the breakup of an engagement or living arrangement. *See* NDCC 14–05–24. Rather, this case is controlled by the law on partition of property. NDCC 32–16–01 says:

> When several cotenants hold and are in possession of real or personal property as partners, joint tenants, or tenants in common, in which one or more of them have an estate or inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein. . . .

Thus, outside of marriage, judicial division of property ordinarily depends on common ownership. In this case, Don and Tangula did not hold any property "as partners, joint tenants, or tenants in common." Thus, Don and Tangula do not qualify for judicial division of their accumulated assets, debts, and mutual gifts.

■ The general rule is that "[c]ohabitants may bring an action for partition of their property where the[ir] intention was clearly to own their property jointly. Conversely, mere cohabitation is not enough to support a right to partition in the absence of actual joint ownership." 59A Am.Jur.2d *Partition* § 28 (1987) (footnotes omitted). *Compare* NDCC 14–02–06 (civil claims for breach of promise to marry "are abolished"); NDCC 14–03.1–04 ("A premarital agreement becomes effective upon marriage.") If live-in companions intend to share property, they should express that intention in writing. In this case, there is neither evidence nor a finding that Don and Tangula intended to own any property together.

■ The parties argue whether the engagement ring was an unconditional gift. Don cites the view, existing in many states, that an engagement ring is a conditional gift, returnable if the engagement is broken without justification by the donee or terminated by consent and, sometimes, irrespective of fault. 1 Clark, *The Law of Domestic Relations in the United States*, § 1.6. In some states, a specific statute governs the return of gifts made in contemplation of a marriage that does not take place. *Id.* at n. 11. Don alleges that "the ring was thought of as Don's by Tangula," despite the fact that "she did not return it to him" when they separated. Don also claims that Tangula had the risk of the ring's loss by fire while it was in her possession, so that he is entitled to recover its value instead of its return. Tangula counters that Don deserves nothing more, because "[s]he paid on the ring while they were together, and ... would have returned it if she still had it, but the [trial] Court found it to be an unconditional gift." Besides, she says, she lost much more in value than the insurance reimbursed her.

■ Because the engagement ring was destroyed in the fire and is unavailable, we cannot consider its return. Furthermore, the trial court ruled that, factually, neither party was indebted to the other. Since the court found that Don and Tangula each left "with essentially the same assets" they had when they began living together, the possibility of fault by one of the parties in ending the engagement is not relevant to this case.

North Dakota law defines a "gift" as "a transfer of personal property made voluntarily and without consideration." NDCC 47–11–06. For a valid gift *inter vivos*, we have said:

> There must be an intention on the part of the donor to relinquish the right of dominion on one hand and to create it on the other, and the delivery must be not only of possession but also of the dominion and control of the property. To have the effect of a valid gift, therefore, the

transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery, and must be so complete that if he again resumes control over it without consent of the donee he becomes liable as a trespasser.

*Lindvig v. Lindvig,* 385 N.W.2d 466, 470 (N.D.1986) (quoting from prior cases). NDCC 47–11–08 directs that "[a] gift, other than a gift in view of death, cannot be revoked by the giver."

Here, both parties acknowledge that Don bought the ring for Tangula, despite her installment payments on it while they were together. Regardless of other arguments about the ring, the findings of the trial court control this case. Applying the law of gifts, the trial court found that "whenever one party used identifiable funds belonging to that party for some purchase that was considered as belonging to the other party, that no loan was being made nor was there any expectation of receiving an ownership interest in the item purchased. If anything, they were unconditional mutual gifts."

■ Our review of the trial court's findings of fact is constrained by the "clearly erroneous" standard. NDRCivP 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Blotske v. Leidholm,* 487 N.W.2d 607, 610 (N.D.1992). We conclude that these findings of fact are consistent with law and are not clearly erroneous.

We affirm.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and JOHNSON, JJ., concur.