1997 ND 89

**Roger BAUCH, Plaintiff, Appellant and Cross-Appellee,**

v.

**Frances BAUCH, Ronald Bauch, Eugene Bauch, and all Defendants unknown to Plaintiff, Defendants, Appellees and Cross-Appellants,**

and

**Richard Bauch and Cynthia Beckstrand, Defendants.**

**Civil No. 960204.**

Supreme Court of North Dakota.

May 13, 1997.

James J. Coles (argued), of Snyder Coles Lawyers, Bismarck, and Ervin J. Lee (appearance), of Lee & Temanson, Minot, for plaintiff, appellant and cross-appellee.

Harris P. Kenner, of Kenner Sturdevant Peterson Cresap, P.C., Minot, for defendants, appellees and cross-appellants. Appearance by appellees Frances Bauch and Eugene Bauch.

VANDE WALLE, Chief Justice.

[¶ 1] Roger Bauch appealed from a judgment partitioning land and rendering an accounting of a family farming operation in his action against his mother, Frances Bauch, and his brothers, Ronald and Eugene Bauch (Bauch family). The Bauch family cross-appealed from the court's decision to sever a barn from land owned by Frances. We hold that the post-trial appointment of a master to clarify an incomplete record did not deprive Roger of a fair trial or due process. We also hold that the trial court's accounting was not clearly erroneous. We affirm.

[¶ 2] After Daniel Bauch's death in 1983, his widow, Frances, and his sons, Roger, Ronald and Eugene, began an informal family farming and ranching operation. The parties disagreed about management decisions and their respective contributions to the venture and, in the spring of 1990, Roger sought to withdraw from the enterprise. Roger sued the Bauch family[1] for an accounting and for partition of a quarter section of land.

[¶ 3] After several days of trial and submission of proposed findings by counsel, the court appointed a master under N.D.R.Civ.P. 53 to conduct further proceedings. The master issued an initial report and findings, but indicated he could not decide the remaining issues without further testimony or a transcript of the trial. At a subsequent hearing, the master examined the parties under oath and in the court's presence. The master thereafter issued a supplemental report and findings.

[¶ 4] The court issued findings of fact and conclusions of law, effectively adopting the master's report and findings. The court ordered partition of the quarter section of land, awarding Roger 22.69 acres and the Bauch family the remainder. The court ordered severance of a pole barn that Roger had built on land owned by Frances and awarded the barn to Roger, but required the Bauch family to pay $3,500 in removal costs. After calculating offsets and credits for Roger and the Bauch family, the court awarded Roger $577.90. Roger appealed, and the Bauch family cross-appealed.

[¶ 5] Roger raises several issues regarding the procedure for appointment of the master under N.D.R.Civ.P. 53.

[¶ 6] Rule 53, N.D.R.Civ.P., permits a trial court to appoint a master to assemble, sort through, and report on complex evidence in matters involving an accounting. *Dakota Grain Systems, Inc. v. Rauser*, 435 N.W.2d 205 (N.D.1989). Under N.D.R.Civ.P. 53(c), the court may specify or limit a master's powers in an order of reference. Subject to limitations stated in the order of reference, masters have authority to regulate the proceedings and to do all acts necessary for the efficient performance of their duties. *Id.* The parties have an obligation to ensure an order of reference adequately identifies the scope of the master's powers. *Dakota Grain.* Masters are required to prepare a report upon matters included in the order of reference and, if an order of reference requires the master to make findings of fact and conclusions of law, they must be set forth in the report. N.D.R.Civ.P. 53(f)(1). In a non-jury case, the court must accept the master's findings unless clearly erroneous, and the findings of a master, if adopted by the court, are considered the findings of the

---

1. Roger's brother, Richard Bauch, and sister, Cynthia Beckstrand, were also named as defendants in the lawsuit, but they were dismissed by stipulation.

court. N.D.R.Civ.P. 52(a) and 53(f)(2). *See Dakota Grain.*

[¶ 7] Here, Roger argues the appointment of a master after the court heard the evidence denied him a fair trial and due process. He contends the court erred in accepting the master's findings, because (1) the order of reference did not authorize the master to make findings, (2) the master did not hear the trial testimony or read the transcript before preparing his findings, and (3) the master's findings were based on extrajudicial information presented after trial. Our resolution of Roger's claims requires a further explanation of the circumstances leading to the appointment of this master.

[¶ 8] After hearing evidence during five days of trial in March and September 1994 and receiving proposed findings by counsel, the court decided some issues in this case.[2] However, the court said the record was "confusing or incomplete" and familial dealings between Roger and the Bauch family were "hopelessly intertwined and casual as to make, in most instances, judicial determination of facts impossible without further proceedings." The court informed counsel it had decided to appoint a master with "plenary powers to make recommendations to the Court as to a comprehensive disposition of property relating to the accounting." Roger's counsel advised the court he had "no problem with the appointment of a Master in this case." In December 1994 the court notified counsel it had appointed John Steinberger, Jr., an attorney, as master and had given him a "cursory history of the case and its status."[3] After resolving compensation issues for the master, the court signed a formal order of reference on April 28, 1995, giving the master "the power to regulate all proceedings in every hearing before him and ... to [do] all acts and to take all measures necessary or proper for the efficient performance of his duties."

[¶ 9] In May 1995, the master filed an initial report and findings based on "stipulations in letters from Counsel, all of the exhibits and ... the proposed findings as submitted ... by the respective counsel." However, the master indicated:

> "Other findings urged by the [Bauch family] ... and issues regarding other aspects of [Roger's] position ... are also not decided and cannot be determined by this Master from the exhibits and other evidence before the Master pending further testimony of the parties or preparation of a trial transcript.... Without further testimony, no finding can, at present, be made."

The court then scheduled a hearing for May 18, 1995, but it was continued to August 17, 1995.

[¶ 10] In July 1995, the master responded to counsels' inquiries about the scope of the August 17 hearing:

> "My review of the exhibits admitted of evidence did not give me enough information to find facts one way or the other; otherwise I would have made a decision on these. To that end, I am going to have to solicit testimony from all of the parties and any one else that the parties would find relevant to put before me.
>
> "It does appear that this is going to be a mini-trial situation. However, I intend to do more questioning and I hope that it might be possible to address my questions to each of the parties in turn so that I can get a feel for each of the issues one at a time and then to move on to the next issue."

[¶ 11] Roger retained new counsel before the August 17 hearing. At the August 17 hearing, the parties were placed under oath, and the master examined them in the presence of the court. In November 1995, the master issued a report and supplemental findings.

---

2. The court decided to partition the quarter section of land, to sever a pole barn valued at $20,000 from land owned by Frances, to award the barn to Roger, and to require the Bauch family to pay $3,500 for costs of removal of the barn.

3. The trial court contacted the Judicial Ethics Advisory Committee and received an advisory opinion that a "judge is permitted to communicate with an appointed master for purposes of providing the master guidance and direction in the performance of the duties of a master, and to assure that the master's work is done efficiently and effectively."

Roger objected to the master's May and November reports and findings. After further hearings by the court in January and April 1996 and the introduction of additional documentary evidence, the court issued its findings effectively adopting the master's report and findings.

[¶ 12] The court's primary concern in appointing a master after trial was to unravel a "confusing" and "incomplete" record for an appropriate judicial resolution of the accounting. Roger's counsel advised the court he had "no problem" with the appointment of a master. *See Dakota Grain* [parties have obligation to ensure order of reference identifies scope of master's powers]. The formal order of reference did not specifically authorize the master to make findings; however, the court's correspondence with the parties and the master unambiguously authorized the master to make a recommendation for a comprehensive disposition of property. The court's order of reference was broad and did not preclude the master from making findings. *See* N.D.R.Civ.P. 53(c) ["[s]ubject to the specifications and limitations stated in the order, the masters have and shall exercise the power to regulate all proceedings in every hearing before them and to do all acts and take all measures necessary or proper for the efficient performance of their duties under the order"]. Under the circumstances, the master's preparation of findings was proper for the efficient performance of his duties.

[¶ 13] Although the master may not have heard the testimony at the prior bench trial or read the transcript, the master considered the exhibits and the parties' proposed findings in drafting his initial findings. Before preparing a final report and supplemental findings, the master also examined the parties under oath in the presence of the court at the August 17 hearing. *See* N.D.R.Civ.P. 53(e)(3) ["[w]henever matters of accounting are in issue before a master, ... the master may require ... the accounts or specific items thereof to be proved by oral examination"]. The correspondence between the court, the master, and the parties establishes the parties were fully apprised that the nature of the proceeding before the master was to clarify a record that was "confusing" and

"incomplete." Although Roger claims the procedure allowed the Bauch family to retry the case with "20–20 hindsight," the record reflects both parties were given the same opportunity to clarify the incomplete record.

[¶ 14] Significantly, the trial court observed the master's examination of the parties at the August 17 hearing, and, during an April 1996 hearing, the court permitted the parties to present additional documentary evidence. Under these circumstances, we reject Roger's argument the findings made from post-trial information were, as a matter of law, clearly erroneous. We conclude the appointment of a master after the trial, although unusual, was warranted by the unique nature of this case. The procedure used by the court to resolve this familial squabble did not deprive Roger of due process or a fair trial.

[¶ 15] In their cross-appeal, the Bauch family contends the court erred in ordering severance of a pole barn from Frances's land and in awarding the barn to Roger, but assessing $3,500 in removal costs against them. They argue the pole barn is real property under N.D.C.C. §§ 47–01–03 and 47–01–05 and was not severable under N.D.C.C. § 47–06–04, absent an agreement among the parties.

[¶ 16] Partition is a matter of right between cotenants. N.D.C.C. § 32–16–01. Partition in kind is preferred. *Schnell v. Schnell,* 346 N.W.2d 713 (N.D.1984). N.D.C.C. § 32–16–01 directs: "Real and personal property may be partitioned in the same action."

[¶ 17] Regardless of the status of the pole barn as real or personal property, this proceeding involved an accounting of an informal family farming operation and setoffs for a multitude of disputed claims. In the context of this contentious proceeding, the trial court was in a better position to resolve the details of an accounting for the entire farming operation. Although the court decided the issue about the barn before submitting the matter to the master, *see* fn. 2, in our view, the disposition of the barn was part and parcel of the entire accounting. We decline any invi-

tation to parse one issue from the multitude of offsets and credits ultimately decided by the court.

[¶ 18] We conclude that the court did not err in adopting the report and findings of the master. N.D.R.Civ.P. 53(f)(2). To the extent the court adopted the master's findings, those findings became the court's findings under N.D.R.Civ.P. 52(a). We hold that the court's findings are not clearly erroneous under N.D.R.Civ.P. 52(a).

[¶ 19] We affirm the judgment.

[¶ 20] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

