2003 ND 136

**Kim McKECHNIE, Plaintiff and Appellee,**

v.

**Brad N. BERG, Defendant and Appellant,**

and

**Bank of North Dakota, Defendant.**

No. 20030028.

Supreme Court of North Dakota.

Aug. 20, 2003.

Thomas D. Kelsch, Kelsch, Kelsch, Ruff & Kranda, Mandan, for plaintiff and appellee.

Brenda A. Neubauer, Neubauer & Oster, Bismarck, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Brad N. Berg appealed from a judgment in a partition action dividing the real and personal property he and Kim McKechnie accumulated during their 14–year unmarried cohabitation. We conclude the trial court did not misapply the law, its findings of fact are not clearly erroneous, and the findings support an equal partition of the parties' real and personal property. We affirm.

I

[¶ 2] During the summer of 1987, Berg moved into McKechnie's trailer home in Westhope and began living there with McKechnie and her daughter. At the time Berg moved into the trailer, he owned very little property. McKechnie owned the trailer home and furnishings and had money in the bank. McKechnie worked as a nurse at the Westhope Nursing Home. Berg had been working on fishing trawlers in Alaska and began working for Hams Well Service in Westhope. The parties maintained separate bank accounts until 1990, when they became engaged. They opened a joint bank account at that time, and although the parties never married, they maintained joint bank accounts in which they deposited their paychecks throughout the remainder of their relationship. McKechnie also deposited her child support payments, which ranged from $75 to $200 per month, in their joint accounts, as well as her tax refunds.

[¶ 3] In 1992, Berg became employed with the Bobcat Company and the parties moved the trailer home to Bismarck. McKechnie also found employment in the area and the parties continued to live in the trailer home until it was sold in 1994. The parties purchased a lot near the Missouri River and used $10,000 of the proceeds of the sale of the trailer home to purchase the land. The deed to the lot was titled in the name of both McKechnie and Berg. The parties also obtained a construction loan in both of their names to build a house on the lot. Berg acted as the general contractor during the construction process, did some of the construction work himself, and hired subcontractors for the jobs he could not perform himself. The Bank of North Dakota holds a mortgage on the property, and mortgage payments were made from the parties' joint accounts. At the time of trial, the property was valued between $175,000 and $214,000, with $113,000 owing on the mortgage. While living together, the parties purchased various items of personal property from their joint accounts, including several vehicles, a camper, a boat, and a riding lawn mower.

[¶ 4] On November 5, 2001, McKechnie moved out of the parties' home. She also brought this action against Berg seeking partition of the parties' property. Following a bench trial, the court found the "contribution of the parties to their estates, both the real property and the personal property, furniture and fixtures, has been more or less equal," and ruled McKechnie "is entitled to partition of the parties' home and division of the personal property and furnishings." The court ordered the home to be sold and "any proceeds over and above those necessary to retire the debt to the Bank of North Dakota should be divided between the parties." The court awarded Berg a 1971 GMC Suburban, a 1971 Chevy pickup, a 1976 camper, and a boat. McKechnie was awarded a 1970 Harley Davidson motorcycle and a

1990 Ford Probe. The court also divided numerous other items of personal property between the parties, resulting in an award of $18,455 in personal property to McKechnie and $19,603 to Berg. Berg appealed.

## II

[¶ 5] Berg argues the trial court erroneously applied the law on equitable distribution of marital property in this case because it allowed McKechnie to introduce evidence of fault during their relationship.

[¶ 6] Under the *Ruff–Fischer* guidelines, both economic and noneconomic fault are proper factors for the trial court to consider in dividing marital property. *McDowell v. McDowell*, 2001 ND 176, ¶ 6, 635 N.W.2d 139. However, N.D.C.C. § 14–05–24, governing the equitable distribution of property following a divorce, does not apply to "the breakup of an engagement or living arrangement." *Kohler v. Flynn*, 493 N.W.2d 647, 649 (N.D.1992). During trial, the court allowed McKechnie to testify that Berg was violent and abusive toward her and that she left the home because Berg had been "cheating on me." Upon Berg's objection to this testimony, the trial court ruled, "I'll permit a limited amount of this, but let's not spend a lot of time on marital conduct, because we don't have a marriage here." Later during the hearing, the trial court upheld objections to similar evidence and struck the testimony, but allowed introduction of pictures of damage to the parties' home allegedly caused by Berg's violence. McKechnie argues this evidence was relevant to property waste, a proper subject in a partition action.

[¶ 7] We have said a trial judge in a nonjury case should ordinarily admit all evidence which is not clearly inadmissible because a judge, when deliberating the ultimate decision, is capable of distinguishing between admissible and inadmissible evidence. *Signal Drilling Co., Inc. v. Liberty Petroleum Co.*, 226 N.W.2d 148, 153 (N.D.1975). Entry of incompetent evidence in a nonjury trial will rarely be reversible error while exclusion of competent evidence will cause reversal when justice requires. *Oberlander v. Oberlander*, 460 N.W.2d 400, 403 (N.D.1990). We presume a court in a bench trial considered only competent evidence. *Bagan v. Bagan*, 382 N.W.2d 645, 647 (N.D.1986). Consequently, it is not reversible error to admit incompetent evidence in a bench trial unless it induced an improper finding. *Weber v. Weber*, 512 N.W.2d 723, 728 (N.D.1994).

[¶ 8] The trial court specifically noted in its decision, "[t]his action is not a dissolution proceeding and the guidelines that would typically constitute considerations in division of a marital estate do not apply to this case in the strict sense." The trial court did not apply the *Ruff–Fischer* guidelines in this case, and Berg has not shown how any of the challenged evidence induced improper findings. We conclude Berg's argument is without merit.

## III

[¶ 9] Berg argues the trial court erred in distributing the parties' assets.

[¶ 10] The law on partition of property, N.D.C.C. ch. 32–16, controls the distribution of property accumulated by unmarried partners and cohabitants. *Kohler*, 493 N.W.2d at 649. There must be a clear intention on the part of the cohabitants to own their property jointly, and mere cohabitation is not enough to support a right to partition in the absence of actual joint ownership. *Id.* Section 32–16–01, N.D.C.C., provides:

> When several cotenants hold and are in possession of real or personal property

as partners, joint tenants, or tenants in common, in which one or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners. Real and personal property may be partitioned in the same action.

[¶ 11] Partition is an equitable remedy governed by equitable principles. *Murphy v. Murphy*, 1999 ND 118, ¶ 11, 595 N.W.2d 571; *Green v. Gustafson*, 482 N.W.2d 842, 849 n. 4 (N.D.1992); *Schnell v. Schnell*, 346 N.W.2d 713, 715 (N.D.1984). Trial courts have "wide judicial discretion in partition actions to 'do equity' and to make a fair and just division of the property or proceeds between the parties," and "great flexibility in fashioning appropriate relief for the parties." *Eastman v. Nelson*, 319 N.W.2d 134, 136 (N.D.1982). A trial court's findings in a partition action will not be reversed on appeal unless they are clearly erroneous. *Mougey Farms v. Kaspari*, 1998 ND 118, ¶ 33, 579 N.W.2d 583; *Bauch v. Bauch*, 1997 ND 89, ¶ 18, 563 N.W.2d 108; *Schnell*, 346 N.W.2d at 715. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Higgins v. Trauger*, 2003 ND 3, ¶ 10, 656 N.W.2d 9.

[¶ 12] Relying on *Kohler*, Berg argues the trial court erred in awarding McKechnie the motorcycle which was titled solely in his name, because there was no written intention by the parties of joint ownership. In *Kohler*, 493 N.W.2d at 648, the parties cohabitated for six months before ending their relationship. Each party kept separate checking accounts during the relationship. The couple bought a mobile home in the woman's name, with the man providing the down payment and the woman making the subsequent payments. The trial court dismissed the man's claim for an " 'equitable share of their joint properties,' " concluding the couple " 'parted with essentially the same assets, or their replacements, they had when they entered into the arrangement.' " *Id.* In affirming the dismissal, this Court said: "If live-in companions intend to share property, they should express that intention in writing. In this case, there is neither evidence nor a finding that [the couple] intended to own any property together." *Id.* at 649. *See also Cermak v. Cermak*, 1997 ND 187, ¶ 12, 569 N.W.2d 280 (relying on *Kohler* and stating "Duane has failed to point to any written evidence giving Loretta any claim to the property of her unmarried cohabitant").

[¶ 13] *Kohler* establishes that writings are a significant factor in determining whether cohabitants intend to share property. The parties in *Kohler* kept separate bank accounts throughout their relationship and legal title to the mobile home was placed in only one of the cohabitant's names. Unlike the situation in *Kohler*, Berg and McKechnie had joint bank accounts for the vast majority of their 14–year relationship. Not only do the joint bank accounts constitute writings evidencing intent, but their home was titled in both McKechnie and Berg's names.

[¶ 14] We reject Berg's suggestion that legal title controls when distribution of accumulated property is sought in a partition action. In *Treiber v. Citizens State Bank*, 1999 ND 130, ¶ 1, 598 N.W.2d 96, we said partition is available "only when there are cotenants with current possessory interests in the property." A possessory interest is the "[r]ight to

possess property by virtue of an interest created in the property though it need not be accompanied by title." *Black's Law Dictionary* 1165 (6th ed.1990). Consequently, although legal ownership of property is strong evidence of an intention to not share property, legal ownership is not dispositive when the person who is not the legal owner has financially contributed to the acquisition of the property. *See, e.g., Tolan v. Kimball,* 33 P.3d 1152, 1155–56 (Alaska 2001); *Spafford v. Coats,* 118 Ill. App.3d 566, 74 Ill.Dec. 211, 455 N.E.2d 241, 245 (1983); *Sullivan v. Rooney,* 404 Mass. 160, 533 N.E.2d 1372, 1374 (1989); *In re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn.1983); *Hudson v. DeLonjay,* 732 S.W.2d 922, 930 (Mo.App.1987); *Wilbur v. DeLapp,* 119 Or.App. 348, 850 P.2d 1151, 1153 (1993). Faced with evidence that the vehicles and motorcycle were purchased with funds from the parties' joint bank accounts, the trial court was not foreclosed from looking beyond legal title to determine ownership interests.

[¶ 15]  Berg argues the trial court failed to properly consider the parties' individual contributions in determining their respective rights to the real and personal property in the partition action. Because the court essentially awarded each party an equal amount of their accumulated property, Berg argues the court ignored his greater physical and financial contributions in acquiring and maintaining their real and personal property.

[¶ 16]  In a partition action, a cotenant may be granted an allowance for the value of substantial, necessary, and permanent improvements which enhance the property's value. *Green,* 482 N.W.2d at 849 n. 4; *Berg v. Kremers,* 181 N.W.2d 730, 736 (N.D.1970). Compensation for inequality in the rights and interests of the parties is addressed under N.D.C.C. § 32–16–41:

When it appears that the partition cannot be made equal between the parties according to their respective rights without prejudice to the rights and interests of some of them, and a partition is ordered, the court may adjudge compensation to be made by one party to another on account of the inequality, but such compensation shall not be required to be made to others by owners unknown.... In all cases, the court has power to make compensatory adjustment between the respective parties according to the ordinary principles of equity.

[¶ 17]  Berg testified his yearly gross income was more than $40,000 for a number of years until 1997, when it dropped below $40,000. Berg did not support his assertions with any records. McKechnie's tax records showed her yearly income fluctuated between $15,300 and $33,400 between 1992 and 2001. McKechnie acknowledged Berg "made more money than I did," but denied that he earned twice as much. Berg testified he spent more than $20,000 of his separate funds on rip rap to save the parties' river lot. The receipts for rip rap he offered in evidence totalled less than $11,000, and one receipt shows it was paid by check. McKechnie kept track of the parties' joint checking account and showed that Berg wrote almost $1,200 in checks to various bars from March to June 2001. McKechnie testified Berg spent money out of the joint checking account on attorney fees for alcohol-related driving offenses. McKechnie also testified Berg purchased expensive elk tags and hunted elk any year he could get a tag. Berg did not dispute that the property should be partitioned, but testified at trial that McKechnie should receive only 25 percent of the proceeds from the sale of the home because "I built the house. I supplied all labor. All she brought to the table was a percentage of her trailer house."

[¶ 18] The trial court found "[f]rom approximately 1990 on, the parties pooled their resources with their respective wages going into a joint household income account which was used to meet all of their living expenses," and although Berg "claimed that during much of the parties' relationship his annual income exceeded" McKechnie's, Berg "did not submit any income records which verified that at the trial." The court found "[v]irtually all of the parties' earnings were expended out of a joint household checking account to accumulate the real estate, build the home and acquire personal property, which the Court considers that the parties' jointly owned at the time of the dissolution of the relationship in November 2001," and "[a]lthough some of the vehicles and recreational vehicles were titled in [Berg's] name alone, they were purchased from the joint household checking account." The court found Berg "used alcohol on a regular and heavy basis during the course of the relationship and has expended considerable sums of the jointly earned money in this manner," and the "funds over and above the amounts needed for basic necessities of life tended to be expended for [Berg's] recreational activities." The court found the "contributions of the parties to their estate was more or less equal and any greater financial contribution on the part of [Berg] was offset by his tendency to expend joint money for his projects over and above the expenditures which jointly benefitted both parties." Because of "the roughly equal contribution of both parties to the acquisition of assets," the court concluded the "estate should be divided equally and each party is entitled to 50 percent of the equity."

[¶ 19] The task of weighing the evidence and judging the credibility of witnesses belongs to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence. *City of Jamestown v. Tahran*, 2003 ND 35, ¶ 4, 657 N.W.2d 235. We conclude the trial court did not misapply the law, its findings are not clearly erroneous, and the findings support an equal partition of the parties' real and personal property.

## IV

[¶ 20] Berg and McKechnie request an award of attorney fees and costs. Under N.D.C.C. § 32–16–45, the "costs of a partition, including reasonable counsel fees, expended by the plaintiff or any of the defendants, for the common benefit, fees of referees, and other disbursements, must be paid by the parties respectively entitled to share in the lands divided in proportion to their respective interests therein." Because the trial court found the property should be divided equally, the court did not err in ruling the parties "shall be responsible for their own attorneys fees and costs." We deny McKechnie's request for attorney fees and costs for this appeal.

## V

[¶ 21] The judgment is affirmed.

[¶ 22] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.