# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 25

Christine Berger,

Plaintiff and Appellee

v.

Brian Repnow,

Defendant and Appellant

## No. 20240147

Appeal from the District Court of Mercer, South Central Judicial District, the Honorable Daniel J. Borgen, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Carey A. Goetz, Bismarck, ND, for plaintiff and appellee; submitted on brief.

Heather M. Krumm, Mandan, ND, for defendant and appellant; submitted on brief.

## Berger v. Repnow
## No. 20240147

**McEvers, Justice.**

[¶1]   Brian Repnow appeals from a judgment in a partition action dividing the parties' property accumulated during their decade-long unmarried relationship. Repnow argues the district court erred in granting Christine Berger's claims of partition and unjust enrichment, and awarding her real property, a business, and proceeds in the amount of $64,000. We affirm in part, concluding the court did not err in finding the parties intended to share ownership of the Expansion Drive property, and in awarding the Powerhouse Nutrition business to Berger. We reverse in part, concluding the court erred in awarding 100% of the Expansion Drive property to Berger, and in failing to complete the unjust enrichment analysis and adequately explain the award for $64,000. We remand for the court to make an award of the Expansion Drive property consistent with the parties' proportionate ownership interests, and to complete the unjust enrichment analysis, explaining, if necessary, its $64,000 award.

I

[¶2]   The parties were in a relationship for approximately ten years but never married. In August 2021, Berger commenced this action, asserting claims of partition, conversion, promissory estoppel, and unjust enrichment. She requested that the real and personal property they accumulated during their relationship be equitably divided or, in the alternative, monetary damages. Berger alleged an ownership interest in five properties, two vehicles, and two businesses. Repnow answered the complaint, alleging he solely owned the real and personal property, and requested the claims be denied.

[¶3]   In October 2023, the district court held a two-day bench trial where the parties testified and entered exhibits into evidence. After the parties filed their post-trial briefs, the district court issued an order dividing property, debts, and proceeds ("Order"). The court granted Berger's claim of partition as to one of the properties, 1209A Expansion Drive, awarding her sole ownership of the property. The court determined the other four properties and two vehicles are

1

solely owned by Repnow. The court granted the unjust enrichment claim, awarding Berger $64,000 for her contributions to Repnow's properties, and denied the claims of conversion and promissory estoppel. The court concluded that the parties shall remain liable for their debt, individually and jointly, and awarded the Dream Girls Boutique business to Repnow and Powerhouse Nutrition to Berger. The court entered its findings of fact, conclusions of law, and order for judgment ("Findings and Conclusions") and judgment.

II

[¶4]   Repnow argues the district court erred in granting Berger's partition claim and awarding her the Expansion Drive property.

[¶5]   Because the parties were not married, the law governing the equitable distribution of property following a divorce under N.D.C.C. § 14-05-24 does not apply. *McKechnie v. Berg*, 2003 ND 136, ¶ 6, 667 N.W.2d 628. "The law on partition of property, N.D.C.C. ch. 32-16, controls the distribution of property accumulated by unmarried partners and cohabitants." *Id.* at ¶ 10. Under N.D.C.C. § 32-16-01,

> When several cotenants hold and are in possession of real or personal property as partners, joint tenants, or tenants in common, in which one or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one or more of such persons for a partition thereof according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners. Real and personal property may be partitioned in the same action.

[¶6]   "Partition is an equitable remedy governed by equitable principles." *McKechnie*, 2003 ND 136, ¶ 11. District courts have "wide judicial discretion in partition actions to 'do equity' and to make a fair and just division of the property or proceeds between the parties," and "great flexibility in fashioning appropriate relief for the parties." *Id.* The court's "findings in a partition action will not be reversed on appeal unless they are clearly erroneous." *Id.* "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no

evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.*

[¶7]  The only real property at issue on appeal is the Expansion Drive property in Hazen, North Dakota. The district court found that the parties intended for Repnow to solely own the other four properties and awarded them to him as sole owner, and Berger did not cross-appeal from that award. As to the Expansion Drive property, the court found in its Findings and Conclusions that the parties intended to jointly own the property, and awarded the property solely to Berger. In its prior Order dividing the property, debts, and proceeds, the court states both that "the parties intended to share ownership" of the Expansion Drive property, and that "the parties intended [Berger] to own, individually, the property." This latter statement comes as a single sentence in the court's "conclusion" section with no analysis supporting the statement. Whereas, the former statement was made within the Order's "law and analysis" section and immediately follows a discussion on joint ownership. Because the court's subsequent Findings and Conclusions state the parties intended to jointly own the property and the court's discussion in its prior Order similarly discusses joint ownership (until the "conclusion" section), we conclude it is clear from the record that the court found the parties intended to share ownership of the Expansion Drive property. *See McKechnie*, 2003 ND 136, ¶ 10 (noting partition actions concern joint ownership).

A

[¶8]  Repnow argues the evidence in the record does not support the district court's finding that the parties intended to jointly own the Expansion Drive property. He argues the property is titled solely in his name and he purchased the home, paid property taxes, insured the property, made improvements, and made payments on the outstanding debt. He contends Berger's "actions cannot be distinguished from a tenant (aside from the fact that she paid no rent), such as paying for the utilities the majority of the time, [and] furnishing and decorating the interior." He asserts she failed to show she made any payments directly towards the property.

[¶9]   Writings are a significant factor in determining whether unmarried long-term partners intend to share property. *See McKechnie*, 2003 ND 136, ¶ 13; *Kohler v. Flynn*, 493 N.W.2d 647, 649 (N.D. 1992). Property titles and joint bank accounts, for example, "constitute writings evidencing intent." *McKechnie*, at ¶ 13. However, "although legal ownership of property is strong evidence of an intention to not share property, legal ownership is not dispositive when the person who is not the legal owner has financially contributed to the acquisition of the property." *Id.* at ¶ 14. In *McKechnie*, we concluded, "Faced with evidence that the vehicles and motorcycle were purchased with funds from the parties' joint bank accounts, the trial court was not foreclosed from looking beyond legal title to determine ownership interests." *Id.*

[¶10] The district court found that the parties maintained separate residences during their relationship and there was no evidence they ever cohabitated, and that they maintained separate checking accounts, "despite comingling some of their finances." The court found that Berger is not listed on the deeds, titles, or tax records of any of the properties; and "legal title for the properties rests solely with [Repnow]." The court found 1209A Expansion Drive served as Berger's residence before and during the parties' relationship. In 2014, a few years into the relationship, Repnow purchased the property from Berger's landlord at the time. It is undisputed that Repnow paid about $10,000 in back rent at the time of purchase that was still owed by Berger. The court found that Repnow individually took out a loan "purportedly used to purchase this property," but "there was evidence that [Berger] made payments towards [the loan]." The court found that the parties jointly borrowed funds that were used to purchase flooring for the property. The court found that "there is no dispute this property was purchased for the benefit of [Berger]," and that she was responsible for routine maintenance, cleaning, and paying "some utilities." The court noted there was evidence that Berger "contributed financially to improving the property and paying off the loan used to finance the purchase of the property."

[¶11] Berger testified the Expansion Drive property was purchased for $85,000, with her contributing around $38,000 and Repnow contributing the remaining amount. At trial, Exhibit 118, a "Promissory Note and Disclosure" document, was admitted into evidence, which shows Berger received a loan from Affinity

4

First Federal Credit Union ("Affinity") for a principal amount of $47,500. The document shows that from this amount, $29,849.43 was paid towards a loan in Repnow's name, which had an originating balance of $90,000. Both parties testified this $90,000 loan was used to finance the Expansion Drive property. Repnow argues Berger's loan was "paid off with a wire transfer of $45,212.38 on July 11, 2017," which "coincides with a wire out transaction from [his] account," and "[a]lthough the numbers do not match exactly, this appears to have been using funds from an advance taken from [another loan in his name]."

[¶12] Further, Berger testified that she contributed towards purchasing the flooring for the Expansion Drive property. Exhibit 114, a "Note, Disclosure and Security Agreement," shows Berger and Repnow jointly borrowed $11,111.95 from Affinity to, in part, "install new flooring in house." Repnow testified this loan was not used for flooring; rather, he believed the funds were used for Berger's personal expenses. Repnow testified he solely paid for the flooring from Lumber Liquidators in Fargo. Exhibit 51 is Repnow's March 2016 credit card statement and shows a payment to Lumber Liquidators for $1,988.89.

[¶13] "The task of weighing the evidence and judging the credibility of witnesses belongs to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence." *McKechnie*, 2003 ND 136, ¶ 19. Despite Repnow being the record title owner of the Expansion Drive property, there is some evidence in the record showing that the parties intended to jointly own the property. Parts of the record show that Berger contributed to purchasing both the property and flooring for the property. *See id.* at ¶¶ 14, 16 (noting court may look beyond legal title when person who is not legal owner has financially contributed to property acquisition and may grant "an allowance for the value of substantial, necessary, and permanent improvements which enhance the property's value"). During their relationship, Repnow never lived at the property; rather, it served as the residence for Berger and her children. Repnow concedes Berger "was responsible for routine upkeep," "kept [the property] clean, and generally paid the utilities." Repnow does not challenge the court's finding that the property was purchased for Berger's benefit.

[¶14] Repnow has not shown that there is no evidence to support the district court's finding that the parties intended to share ownership of the Expansion Drive property. Nor has he shown that finding was induced by an erroneous view of the law. On this record, we are not left with a definite and firm conviction a mistake has been made. We therefore conclude the court did not clearly err in finding the parties intended to share ownership of the Expansion Drive property.

B

[¶15] Repnow argues that even if they jointly owned the Expansion Drive property, the district court erred in awarding it solely to Berger.

[¶16] Section 32-16-01, N.D.C.C., authorizes proceedings to partition property "according to the respective rights of the persons interested therein and for a sale of such property or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners." "If the property is situated so that partition cannot be made without great prejudice to the owners, the court may order sale of the property; otherwise, the court must order a partition according to the respective ownership rights of the parties and appoint three referees to partition the property." *In re Est. of Loomer*, 2010 ND 93, ¶ 16, 782 N.W.2d 648 (citing N.D.C.C. § 32-16-12). Compensation for inequality in parties' rights and interests is permitted under N.D.C.C. § 32-16-41:

> When it appears that the partition cannot be made equal between the parties according to their respective rights without prejudice to the rights and interests of some of them, and a partition is ordered, the court may adjudge compensation to be made by one party to another on account of the inequality . . . . In all cases, the court has power to make compensatory adjustment between the respective parties according to the ordinary principles of equity.

[¶17] After determining the property was jointly owned and subject to partition, the district court should have considered the parties' respective ownership rights and how to equitably divide the property. *See, e.g.*, *McKechnie*, 2003 ND 136, ¶¶ 18-19 (affirming an equal property division where both parties equally contributed to the acquisition of assets); *City of Harwood v. City of Reiles Acres*, 2015 ND 33, ¶ 33, 859 N.W.2d 13 ("The district court did not err in ordering a

6

partition by sale and distribution of the proceeds of the sale to Harwood and Reiles Acres in proportion to their ownership interests."); *Schnell v. Schnell*, 346 N.W.2d 713, 716 (N.D. 1984) (noting that owelty under N.D.C.C. § 32-16-41 "may be employed in certain instances to bring about an equitable partition"). Instead of considering an equitable division, the court awarded 1209A Expansion Drive solely to Berger, concluding that "[p]rinciples of equity require this property to be awarded to [Berger] to facilitate a fair and just division of the properties, despite [Repnow] being listed as the only record owner."

[¶18] We conclude the court erred in awarding 100% of the shared real property to Berger after determining the parties were joint owners, disregarding and effectively eliminating Repnow's ownership interest. We reverse the Expansion Drive property award, and remand for the court to determine the parties' respective ownership interests based on their contributions to the Expansion Drive property and any other relevant factors, and to make an award consistent with their proportionate ownership interests.

III

[¶19] Repnow argues the district court erred in awarding Powerhouse Nutrition to Berger. He contends the court was unclear under which claim it awarded the business, but fails under any of her claims including partition.

[¶20] In her complaint, Berger alleged she should be awarded Powerhouse Nutrition under a theory of conversion. The district court denied the conversion claim. Berger alleged in more general terms that all property accumulated during their relationship, including both real and personal property, should be divided under the law of partition. Under N.D.C.C. § 32-16-01, "Real and personal property may be partitioned in the same action." Because the court rejected Berger's conversion claim, but granted her partition claim, we conclude the court unambiguously awarded Powerhouse Nutrition under the law of partition.

[¶21] Unlike the Expansion Drive property, the district court did not find Powerhouse Nutrition was jointly owned by the parties. The court found that the parties intended Powerhouse Nutrition to be owned by Berger. In support of this finding, the court noted that Berger founded and operated Powerhouse Nutrition

7

during the course of the parties' relationship; the business sold Herbalife products, which Berger had "sold on her own for a number of years"; and Berger managed the day-to-day operations of the business.

[¶22] Berger testified that she was the sole member of Powerhouse Nutrition, Repnow was not involved with the business, she and her children were employed by the business, she was the sole signatory on the Powerhouse Nutrition checking account, she filed taxes on the business's earnings, and Powerhouse Nutrition's mail was sent to her residence. Exhibit 97 contains the Articles of Organization filed with Secretary of State identifying Berger as the organizer of this limited liability company.

[¶23] Repnow argues the parties jointly owned the business until their relationship ended; Berger allowed the trade name to lapse and therefore "willingly relinquish[ed]" the name; "[f]rom the evidence presented at trial, it is not possible to assign a value to the property taken by [Berger] or to equitably divide the remains" of the business; and "[t]here are no financial accounts, assets, or debts associated" with the business other than the trade name. Repnow asserts that Powerhouse Nutrition "was run jointly by the parties, with [Repnow] taking part in every aspect of the business, including using his own funds to help finance it." Repnow testified that he was involved in the day-to-day operations of Powerhouse Nutrition and purchased appliances and inventory. Repnow testified that only Berger was able to order the Herbalife products because she was a distributor of the brand. Repnow does not state how much he financially contributed to the business, or argue his financial contributions required the court to recognize him as a joint owner. Rather, his argument appears to be that the court erred if it awarded the Powerhouse Nutrition trade name to Berger.

[¶24] The district court awarded the entire business to Berger based on its determination she was the sole owner. We conclude the court did not clearly err in finding Berger to be the owner of Powerhouse Nutrition. Repnow provides no legal support for his argument that the trade name must be treated differently and excluded from the rest of the assets in the business. Nor does he provide support for his argument that the trade name is no longer an asset of the business when the trade name "lapses" with the Secretary of State's Office. We conclude

8

the court did not err in awarding Powerhouse Nutrition to Berger along with any remaining assets.

IV

[¶25] Repnow argues the district court erred in awarding Berger $64,000 under the doctrine of unjust enrichment.

> Unjust enrichment is an equitable doctrine based upon a quasi or constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another. Five elements are required to establish unjust enrichment: 1. An enrichment; 2. An impoverishment; 3. A connection between the enrichment and the impoverishment; 4. Absence of a justification for the enrichment and impoverishment; and 5. An absence of a remedy provided by law. A district court's decision on whether the facts support a finding of unjust enrichment is a conclusion of law that is fully reviewable on appeal. A court's findings of fact supporting an unjust enrichment decision are subject to the clearly erroneous standard of review.

*Wades Welding LLC v. Tioga Properties, LLC*, 2021 ND 214, ¶ 28, 966 N.W.2d 912 (cleaned up).

[¶26] The district court found Berger contributed to Repnow's properties by "paying some debt associated with them," enriching Repnow. The court noted that Berger "would be impoverished if she was not reimbursed for some of her contributions," awarding her $64,000 as reimbursement for her contributions. The court's findings would appear to satisfy the first three elements of an unjust enrichment claim because the court found there was an enrichment and impoverishment that are connected.

[¶27] Repnow argues Berger failed to prove the fourth element—absence of a justification for the enrichment and impoverishment. He contends she received many benefits in return for her contributions to the properties, including $10,000 back rent, living rent-free for years, using two of his properties for office space when she was a mortgage broker, and rent-free use of the properties for her Herbalife or Powerhouse Nutrition businesses. Repnow testified that rent for 1209A Expansion Drive would have been $750 a month in his estimation, which

9

he argues is more than the $64,000 she alleged she contributed during their relationship. Berger admits the court "did not specifically analyze the fourth [element]." We agree that the court failed to analyze the fourth element.

[¶28] Additionally, Repnow argues the amount of $64,000 "was not sufficiently explained or documented by the evidence and the court did not explain why it adopted this number." The district court found Berger "contributed financially and otherwise in an amount of at least $64,000" to Repnow's four properties, but does not explain where this amount came from or what evidence in particular it was relying on in establishing this amount. In her post-trial brief, Berger asserted that if the court did not award her a one-half interest in the five properties at issue, it should award her $64,000 "based on the evidence presented at trial." Berger provides no citation to the record in her appellee brief showing this amount is supported by evidence in the record. Further, Repnow argues the amount is erroneous because it did not separate out her contributions to 1209A Expansion Drive, which the court awarded her in full. Repnow argues, "To award her both the property *and* a cash award compensates her twice for the same alleged contribution and is a clear error." Based on the court's findings, we cannot discern whether the $64,000 amount was clearly erroneous for the reasons stated by Repnow. Specifically, whether some of the amount was double counted or what evidence the court is relying on that supports the $64,000 figure.

[¶29] An appellate court is "a court of review, not of first view." *Bolinske v. Sandstrom*, 2022 ND 148, ¶ 23, 978 N.W.2d 72. "A reviewing court needs to know the reasons for the trial court's decision before it can intelligently rule on the issues, and if the trial court does not provide an adequate explanation of the evidentiary and legal basis for its decision we are left to merely speculate whether the court properly applied the law." *In re Est. of Nelson*, 2015 ND 122, ¶ 8, 863 N.W.2d 521; *see also Rothberg v. Rothberg*, 2006 ND 65, ¶ 17, 711 N.W.2d 219. We reverse the unjust enrichment award and remand for the district court to complete the unjust enrichment analysis—determining whether there was an absence of a justification for the enrichment and impoverishment. If the court determines there was an absence of a justification for the enrichment and impoverishment, the court shall either explain how it arrived at its award for $64,000 or provide a new award supported by the evidence.

10

## V

[¶30] We affirm the judgment in part, concluding the district court did not err in finding the parties intended to share ownership of 1209A Expansion Drive, and in awarding Powerhouse Nutrition to Berger; and reverse in part, concluding the court erred in awarding 100% of 1209A Expansion Drive to Berger, and in failing to complete the unjust enrichment analysis and adequately explain the award for $64,000. We remand for the court to make an award of the Expansion Drive property consistent with the parties' proportionate ownership interests, and to complete the unjust enrichment analysis, and explain, if necessary, its $64,000 award.

[¶31] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr